BIRCHARD *v.* BOARD OF HEALTH OF THE CITY OF LANSING.

NUISANCE—PESTHOUSE—HEALTH—POWERS OF HEALTH BOARD—LANSING CHARTER—INJUNCTION.

    The provisions of the charter of the city of Lansing, making it the duty of the board of health of said city to locate and maintain a pesthouse, did not vest it with the power to locate said pesthouse in a thickly settled residential district, where it would be a nuisance, but the discretion lodged in said board is to be exercised by it in determining between different lawful locations.

Appeal from Ingham; Collingwood, J. Submitted October 24, 1918. (Docket No. 60.) Decided December 27, 1918.

Bill by Emma Birchard and others against the board of health of the city of Lansing and another to enjoin the maintenance of a hospital for contagious diseases. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs.

See notes in 5 L. R. A. (N. S.) 1028; 18 L. R. A. (N. S.) 260; 25 L. R. A. (N. S.) 228.

*Cummins & Nichols* (*C. W. McGill*, of counsel), for plaintiffs.

*Samuel H. Rhoads,* City Attorney, and *Carl H. Reynolds,* Assistant City Attorney, for defendant board.

*Joseph H. Dunnebacke, amicus curiæ.*

Fellows, J. This bill is filed to restrain the maintenance in a residential district of a pesthouse, or as it is sometimes denominated in the record, a detention hospital for the treatment of infectious diseases. The case was heard and an opinion filed in the court below directing the dismissal of the bill prior to the handing down of the opinions of this court in *Barth* v. *Hospital Ass'n,* 196 Mich. 642, and *Saier* v. *Joy,* 198 Mich. 295 (L. R. A. 1918A, 825). The decree not having been entered, a reargument of the case was had and a further opinion was filed in which it was recognized that these cases were controlling of the instant case, were it not for the fact that these cases deal with rights between individuals, while in the instant case the defendant is acting under certain charter provisions of the city of Lansing, which not only authorize but make it the duty of defendant board of health to locate and maintain such an institution; and it was the opinion of the trial judge that such provisions justified and authorized the board to select the present site and there maintain the institution in the absence of arbitrary action in so selecting it, which was not found to exist here. The bill was accordingly dismissed.

In this court it is not seriously urged, cannot be, that the cases cited do not control this case unless a different rule should obtain where the institution is located and maintained by a public board of health. We held in these cases that while the institutions in-

volved were not nuisances *per se*, they became such by reason of their location in a residential district. We recognized that there might be no actual danger if properly conducted, but that their maintenance in close proximity to the home would create such dread and fear in the mind of the normal person as—

"would destroy the comfort, the well-being and the property rights of the plaintiffs,"

—depressing the mind and lowering the vitality of the normal person, rendering one more susceptible to disease, and reducing the value of the property so situated; and in each of the cases this court decreed injunctive relief. In the instant case there is much testimony tending to show that a pesthouse may be so conducted, and well-regulated ones are, as to cause no actual danger to nearby residents. But substantially all the experts who testify to this effect agree that their opinion is not shared by the general public, and that the normal person has a horror and dread of a pesthouse, and a fear of infection from proximity to it.

It must be borne in mind that we are not here dealing with the question of immunity of a municipality from an action for damages when in the discharge of a State agency, as was the case of *Nicholson* v. *City of Detroit*, 129 Mich. 246 (56 L. R. A. 601), nor with a contest between two municipalities as to the location of a pesthouse as was *Township of Summit* v. *City of Jackson*, 154 Mich. 37 (18 L. R. A. [N. S.] 260). Here the question involved is the protection of private rights by injunction against a public board authorized and required by the charter to perform certain duties. Nor are we dealing with an emergency caused by epidemic of an infectious disease. The detention hospital, or pesthouse, here involved is permanent in character and the injury caused

continuous  The charter provisions, so far as important here, are as follows:

"The said board of health has hereby conferred upon it, and may exercise all the powers and authority vested in health boards and health officers by the general laws of the State. * * *

"The said board of health shall have power, and it shall be its duty, to take such measures as shall be deemed effectual to prevent the entrance of any pestilential disease into the city; * * * to establish, maintain and regulate a pesthouse or hospital at some place within the city or not exceeding three miles beyond its bounds. * * *

"And from time to time to do all acts, make all regulations, and pass all resolutions, which it shall deem necessary or expedient for the preservation of health, and the suppression of disease in the city, and to carry into effect and execute the powers hereby granted." Lansing Charter 1913, §§ 288, 294.

On behalf of defendant board of health it is insisted that under these provisions it is a State agency, vested with large discretionary powers; that in the exercise of an honest judgment it selected the site in question and that its decision is final and may not be reviewed by the judicial branch of the government, except in case of a clear abuse of that discretion. On the other hand it is urged that the discretion of the board is limited to the selection of a lawful site, one where the institution will not by reason of its location be a nuisance; that it may not under the power conferred inflict injury upon the individual or invade private rights. Upon this subject the authorities are not in accord.

A leading case on the subject is *Mayor, etc., of Baltimore* v. *Improvement Co.,* 87 Md. 352 (40 L. R. A. 494, 67 Am. St. Rep. 344, 39 Atl. 1081). This was a case brought by the owner of adjoining lands to restrain the public officials from the use of premises owned by the city for the detention of a leprosy pa-

tient. The defense as here was that the officials were maintaining the pesthouse under plenary power conferred by the State. The court said:

"However broad, therefore, may be the powers of a municipality to erect and maintain hospitals and pesthouses for the segregation and treatment of contagious and infectious diseases, and however necessary their exercise may be, they must, generally speaking, be exerted and put into operation subject to the no less well-defined right of the individual to possess and enjoy his unoffending property without the molestation of a nuisance. It cannot be pretended that the city authorities could, even under their comprehensive powers, locate a pesthouse in the midst of a thickly settled community. * * *
"The mere power to erect and maintain hospitals and pesthouses does not imply or include the further power to erect and maintain them in such a way or at such a place as will cause injury to others. * * *
"Assuming at this point that leprosy is a contagious disease which is a menace to the health of a community, and assuming also that the mayor and city council through its health department were about to utilize this 20-acre tract of land for the first time for the erection of a pest house thereon for the reception of this particular patient, there can, in view of the legal principles just discussed, and in the light of the facts to which allusion has been made, be no doubt as to right of the Fairfield Improvement Company to invoke the restraining aid of a court of equity to prevent the establishment of such a nuisance."

In the case of *Thompson* v. *Kimbrough*, 23 Tex. Civ. App. 350 (57 S. W. 328), an action was brought by the officers of a school district to restrain the maintenance of a pesthouse in proximity to the school building. The defendants made the contention as here that the decision of the health authorities, there the commissioners' court and health officer, as to the location of the pesthouse was final. The court thus stated the claim:

"The further contention is made, that the law invests the commissioners' court, in connection with the county health officer, with exclusive and final jurisdiction in the matter of establishing and maintaining pest houses and detention camps to prevent the spread of smallpox and other infectious and contagious diseases, and that the exercise of this jurisdiction is not subject to review by any judicial tribunal."

After considering the statutory provisions involved, the court said:

"The authority of the commissioners' court to proclaim quarantine, and to have it established, maintained, and enforced through the county physician, is not brought in question by this suit. It may, and perhaps should be, admitted that the exercise of that authority is not subject to review by judicial tribunals; but it does not necessarily follow that all the acts of the officers and agents of the county in relation to the subject-matter are beyond the reach of judicial authority. The authority of such court to proclaim and cause the enforcement of quarantine does not carry with it the arbitrary power in the officers and agents of the county to unnecessarily violate the rights of others. The existence of such authority does not imply that the officers and agents of the county may establish and maintain a nuisance, either public or private, not necessary to the end to be accomplished."

The language of Lord Watson in the case of *Metropolitan Asylum Dist.* v. *Hill,* L. R. 6 App. Cas. 193, 212, decided by the house of lords, is quite persuasive as bearing upon the construction to be given the language here under consideration. He said:

"And I am disposed to hold that if the legislature, without specifying either plan or site, were to prescribe by statute that a public body shall, within certain defined limits, provide hospital accommodation for a class or classes of persons labouring under infectious disease, no injunction could issue against the use of an hospital established in pursuance of the act,

provided that it were either apparent or proved to the satisfaction of the court that the directions of the act could not be complied with at all, without creating a nuisance. In that case, the necessary result of that which they have directed to be done must presumably have been in the view of the legislature at the time when the act was passed.

"On the other hand, I do not think that the legislature can be held to have sanctioned that which is a nuisance at common law, except in the case where it has authorized a certain use of a specific building in a specified position, which cannot be so used without occasioning nuisance, or in the case where the particular plan or locality not being prescribed, it has imperatively directed that a building shall be provided within a certain area and so used, it being an obvious or established fact that nuisance must be the result. In the latter case the onus of proving that the creation of a nuisance will be the inevitable result of carrying out the directions of the legislature, lies upon the persons seeking to justify the nuisance. Their justification depends upon their making good these two propositions—in the first place, that such are the imperative orders of the legislature; and in the second place, that they cannot possibly obey those orders without infringing private rights. If the order of the legislature can be implemented without nuisance, they cannot, in my opinion, plead the protection of the statute; and, on the other hand, it is insufficient for their protection that what is contemplated by the statute cannot be done without nuisance, unless they are also able to shew that the legislature has directed it to be done. Where the terms of the statute are not imperative, but permissive, when it is left to the discretion of the persons empowered to determine whether the general powers committed to them shall be put into execution or not, I think the fair inference is that the legislature intended that discretion to be exercised in strict conformity with private rights, and did not intend to confer license to commit nuisance in any place which might be selected for the purpose."

The following authorities will be found instructive

on the questions involved in this case:   *Cherry* v.
*Williams,* 147 N. C. 452 (61 S. E. 267, 125 Am. St.
Rep. 566, 15 Ann. Cas. 715) ; *Kestner* v. *Homeopathic
Hospital,* 245 Pa. 326 (52 L. R. A. [N. S.] 1032, Ann.
Cas. 1916A, 123, 91 Atl. 659) ; *Anable* v. *Board of
Com'rs of Montgomery Co.,* 34 Ind. App. 72 (71 N. E.
272, 107 Am. St. Rep. 173) ; *Everett* v. *Paschall,* 61
Wash. 47 (31 L. R. A. [N. S.] 827, 111 Pac. 879, Ann.
Cas. 1912B, 1128) ; *Stotler* v. *Rochelle,* 83 Kan. 86 (29
L. R. A. [N. S.] 49, 109 Pac. 788) ; *Harper* v. *City of
Milwaukee,* 30 Wis. 365; *Gilford* v. *Babies' Hospital,*
21 Abb. New Cas. 159 (1 N. Y. Supp. 448).

But we think plaintiffs' contention finds support in
the former adjudications of this court.   In *Pennoyer*
v. *City of Saginaw,* 8 Mich. 534, this court held a mu-
nicipality liable for the continuance of a nuisance cre-
ated by it.   In *Cubit* v. *O'Dett,* 51 Mich. 347, it was
said:

"The highway overseer no doubt has a discretion
in deciding how and where he will expend highway
labor; but it is a discretion limited by the rights of
individuals, and when he invades those rights, he be-
comes liable."

In the recent case of *Attorney General* v. *City of
Grand Rapids,* 175 Mich. 503 (50 L. R. A. [N. S.]
473, Ann. Cas. 1915A, 968), this court, reversing the
decree of the court below, found that the defendant
by emptying sewage into the Grand River created a
nuisance to lower riparian owners and the public, and
entered a decree for injunction as prayed in the bill.
This court there quoted with approval from the case
of *Spokes* v. *Board of Health,* L. R. 1 Eq. 42, the fol-
lowing:

"What difference can it possibly make as to the com-
mission of an illegal act, whether a man acts on be-
half of thousands or on behalf of himself only?"

The case much relied upon by the trial judge in

reaching the conclusion he did was *Upjohn* v. *Richland Township*, 46 Mich. 542 (29 Am. Rep. 16, note). That case like this was an equity case, which this court considers *de novo*, but its facts were materially different. The claimed nuisance there was a cemetery. The defendant sought to increase the size of its cemetery by the use of additional grounds across the road from the original grounds. There was some doubt as to whether there was as much contemplated danger from such addition as from a nuisance the complainant was maintaining on his own land. But in that case the complaining party had purchased his premises after the original cemetery was established. If the cemetery was a nuisance, he had gone to the nuisance. Here the nuisance has been brought to the complaining parties. But in that case, while this court recognized the broad discretion vested in boards of health, it at the same time recognized the power of the court of equity to enjoin injury to private rights by them.

We conclude that the provisions of the charter under consideration do not vest in the defendant board of health the power to locate a pesthouse in a thickly-settled, residential district, where, by reason of its location, it would be a nuisance, and where its permanent maintenance would work continuing damage to adjoining and nearby property and would result in the destruction of the home in its comfort and well-being; and that the discretion lodged in the board is a discretion to be exercised by it in determining between different lawful locations.

It follows from what has been said that the decree of the court below must be reversed and one here entered in conformity with the prayer of the bill. Plaintiffs will recover costs of both courts.

BIRD, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred. OSTRANDER, C. J., did not sit.