FALKNER v. BROOKFIELD.

1. INJUNCTION—ANTICIPATED NUISANCE.

Equity will not enjoin an injury which is merely anticipated nor interfere where an apprehended nuisance is doubtful, contingent, conjectural, or problematical; a bare possibility of nuisance or a mere fear or apprehension that injury will result not being enough.

2. SAME—PROBABLE NUISANCE.

An injunction may issue to prevent a threatened or anticipated nuisance which will necessarily result from the contemplated act, where the nuisance is a practically certain or strongly probable result or a natural or inevitable consequence.

3. NUISANCE—AUTOMOBILE JUNK YARD—INJUNCTION.

The maintenance of an automobile wrecking or junking business in a residential area, although not a nuisance *per se*, may be enjoined by nearby residents, where it will constitute an attractive and dangerous nuisance to small children living in the neighborhood; the sight of the mangled automobile bodies will operate as a constant reminder of dirt, filth, and death, have a depressing and morbid effect upon the minds of plaintiffs, their neighbors, families, guests, roomers, and tenants, and weaken their physical force and resistance, and subject them to fear, dread, horror, annoyance, discomfort, and distress; that there will be numerous intentional and unintentional fires with odiferous, sooty, and otherwise contaminating resulting fumes and gases; that the place will harbor vermin and disease germs; that the attendant noises will disturb the peace and quiet, and depreciate the value of the property.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 39 Am Jur, Nuisances §§ 151, 152.
    Right to enjoin threatened or anticipated nuisance.  55 ALR 880.
[3]  39 Am Jur, Nuisances § 70.
    Automobile wrecking place as nuisance.  110 ALR 1461.

4. PLEADING—MOTION TO DISMISS—WELL-PLEADED ALLEGATIONS AC-
CEPTED AS TRUE.
   The well-pleaded allegations of a bill must be accepted as true
   in determining whether or not a motion to dismiss the bill
   should be granted or denied.

5. NUISANCE—INJUNCTION—PLEADING—AUTOMOBILE JUNK YARD.
   There should be a full trial on a bill to enjoin the conduct of an
   automobile wrecking and junking business, where plaintiff has
   alleged facts which, if proved, would show the residential
   character of the neighborhood and the deleterious effects that
   operation of the contemplated business in all probability will
   have on it and those residing therein.

Appeal from Van Buren; Anderson, Jr. (David),
J. Submitted June 6, 1962. (Docket No. 15, Calen-
dar No. 49,354.) Decided October 1, 1962.

Bill by John Falkner and 16 others, for themselves
and as representative of all neighboring property
owners, against Robert Brookfield and Celia Brook-
field to enjoin use of their property for conducting
business of wrecking and junking automobiles. Bill
dismissed on motion. Plaintiffs appeal. Reversed
and remanded.

*Herbert Phillipson, Jr. (Williams & Williams,* of
counsel), for plaintiffs.

*John S. Olds (Sheldon Rupert,* of counsel), for
defendants.

DETHMERS, J. Plaintiffs appeal from an order
granting defendants' motion to dismiss plaintiffs'
bill of complaint for failure to state a cause of action.

Plaintiffs are property owners and residents of a
rural area which their bill of complaint describes
as being a residential, farm and farm residential
vicinity, a pleasant and congenial neighborhood with
attractive residences and a fine place in which to

bring up children. Defendants also are property owners in that locality. This suit is brought to enjoin them from conducting an automobile wrecking and junking business on their property, as they are licensed by the secretary of State and have started to do.

The pertinent portion of plaintiffs' bill of complaint reads as follows:

"14. That the said use of said premises constitutes a public and a private nuisance and that the intended further use of said premises will constitute a public nuisance and a private nuisance as follows:

"A. That said automobiles are stored in full view of all passersby and neighbors and are and will be attractive to small children and that they will have broken glass, sharp edges, holes to trap small feet, afford havens and refuse that attract and harbor rats and mice;

"B. That other wrecked automobiles and derelict and decomposing bodies will be constantly hauled to said premises and the trash and refuse therefrom will be hauled away from said premises; that the sight of said old, wrecked, discarded, dismantled, junked, beaten and mangled automobile bodies, in which people have died and been maimed, and the piles of junk, old metal, steel, iron, trash, upholstery, rubber tires, broken glass on said premises, and being hauled away therefrom will and cannot help but operate as a constant reminder of dirt, filth and death, and have a depressing and morbid effect upon the minds of the average and ordinary person in the community, and especially upon the minds of plaintiffs, their neighbors, families, guests, roomers and tenants and impair their nervous system and weaken their physical force and resistance and subject them to fear, dread, horror, annoyance, discomfort and distress; * * *

"D. That there are 12 children under the age of 9 in the immediate vicinity of which 10 are of preschool age and of which 6 will share boundaries with

the junk yard; that said children will be attracted to the derelict automobiles and the junk and to fires that occur and spring up on the premises as well to the acetylene torches, cutting and mechanical operation of a junk yard and auto dismantling and to the huge trucks used to haul away junk and bodies and to cranes and weights which at a future time may be used to break and smash the automobile bodies remaining after parts have been stripped and burned from them; that said operations are dangerous and children may be cut, hurt, mangled or killed as well as bitten by rats, mice, mosquitoes, dogs, cats and fleas, and the germs of disease that are harbored in said animals and vermin;

"E. That it is necessary for junk yards and auto dismantling establishments to burn the upholstery, rubber, pasteboard and plastics that are attached, glued, cemented, riveted, sewn and stapled to automobile bodies as well as the tires and other inflammable parts of said bodies; that the burning of said bodies gives off rank, odiferous, obnoxious, harmful, sickening and searing fumes and gases filled with soot and carbon, that will blacken and stain washes, farm produce, plants, grass and lawns and contaminate the air of the countryside; that the cutting by acetylene to reach parts and separate them often causes fires where none are intended or wanted, burning the nests of vermin, gasoline fumes remaining in the tanks, rubber, upholstery and plastics and other materials, sometimes causing grass fires and spreading to other automobile bodies leaning and located next to the burning body; that gasoline in the fuel tanks explodes with a loud report; and danger to the area;

"F. That the customers of an auto dismantling establishment as well as many of the employees are persons dealing in junk and filth and refuse seeking parts for junk cars they seek to repair and fix; that said persons are often derelicts, transients and undesirables, driving vehicles in disrepair that are noisy and without proper mufflers; that the trucks that haul

away junk and broken bodies are old and dirty and disreputable, that said persons are and will be attracted to and employed in said establishment and frequent the neighborhood which is presently quiet, neat, clean and residential; that the plaintiffs will be afraid to have their children in their yards, unable to use their yards for picnics and their windows towards said yard; and will be unable to open them without admitting foul odors and stenches;

"G. That said place will give off foul odors and vapors of decaying rubber, rusting metal, mouldy and soggy upholstery, as well as rags and junk; that the piles of junk and waste metal and other items will contain other foul and odiferous items including the dead and decaying bodies of vermin containing the germs of disease;

"H. That the cutting and smashing of bodies, the hammering of parts, the breaking of metal, the tearing and ripping of steel, the noise of huge trucks being piled with old metal and hauling it over the rough countryside; the dumping of wrecked auto bodies and piling and dismantling of them will disturb the vicinity interfering with the neighbors and the use of their property as well as their peace of mind; * * *

"17. That the maintenance of a junk yard and auto dismantling operation in the midst of plaintiffs' residences would jeopardize their health, would cause them to become depressed, would prevent them from enjoying their homes in peace, quiet and comfort, would impair the marketability of their properties and result in a depreciation of the value thereof, and in a diminution in the rental value thereof, would materially interfere with the plaintiffs' use of their property, would cause great and irreparable injury."

At the hearing on motion for an order to show cause why a temporary injunction should not issue, some testimony was taken, limited to showing the character of the neighborhood. The motion to dismiss is supported by affidavits to the effect that de-

fendants are licensed by the secretary of State to conduct an auto salvage business at that location, that their business operations in that connection, to date, consist solely of preparing the premises for the intended purpose and the purchase of 4 used automobiles and parking them there, and that the area is not essentially residential. No other testimony was taken and the case was never tried.

The court's opinion, in finding that the bill of complaint does not state a cause of action, contains the following:

"The bill is founded on the premise that an auto salvage yard in this location will necessarily be an actionable nuisance and should therefore, be enjoined.  *  *  *

"Defendants' motion to dismiss is based upon the proposition that a lawful business should not be enjoined unless and until an actionable nuisance exists, that the bill alleges only anticipatory invasions of plaintiffs' rights and should be dismissed as prematurely filed.  *  *  *

"Plaintiffs cite and rely on a line of authority which holds that a court may restrain and prevent the establishment of a lawful business in a strictly residential area, if such business will necessarily result in a nuisance. *Barth* v. *Christian Psychopathic Hospital Ass'n,* 196 Mich 642; *Saier* v. *Joy,* 198 Mich 295 (LRA 1918A, 825) ; *Birchard* v. *Board of Health of the City of Lansing,* 204 Mich 284 (4 ALR 990).

"Defendants rely on the rule that a court will not enjoin a lawful business on anticipatory allegations and that such businesses should be regulated only and actual nuisances, arising from the operation of the business, enjoined. *Plassey* v. *S. Lowenstein & Son,* 330 Mich 525.

"Both of the above lines of authority are good law if properly applied to the facts of the particular case. *Northwest Home Owner's Ass'n* v. *Detroit,* 298 Mich 622.

"The question before the court is whether the facts bring the case within the authorities cited by plaintiffs, or those cited by defendants.

"Granting that an auto salvage yard is not the most desirable, it still is a legitimate business and not a nuisance *per se.* *Perry Mount Park Cemetery Ass'n* v. *Netzel,* 274 Mich 97.   *   *   *

"It appears that the area is not strictly residential there being at least 5 commercial ventures in the immediate vicinity.  The bulk of plaintiffs' allegations are conclusions as to what plaintiffs believe will happen in the future.  That plaintiffs' counsel says they are pleaded as facts does not make it so.

"This court concludes that the bill of complaint does not state a cause of action.  It does not appear that a nuisance must necessarily result from the operation of this business."

From the cited authorities and others it appears that equity will not enjoin an injury which is merely anticipated nor interfere where an apprehended nuisance is doubtful, contingent, conjectural or problematical.  A bare possibility of nuisance or a mere fear or apprehension that injury will result is not enough.  On the other hand, an injunction may issue to prevent a threatened or anticipated nuisance which will necessarily result from the contemplated act, where the nuisance is a practically certain or strongly probable result or a natural or inevitable consequence.

The bill of complaint here is almost copied from the one that stood up in *Saier* v. *Joy,* 198 Mich 295 (LRA 1918A, 825).  We quote from a syllabus in that case the following:

"The maintenance of an undertaking establishment and morgue in a residential section of a city, although not a nuisance *per se,* may be enjoined by nearby apartment owners where it will cause depression to the normal person, lower his vitality, render him more susceptible to disease, and deprive his home of

the comfort, repose and enjoyment to which he is entitled, and he will sustain substantial financial loss, because of the depreciation in value of his property, and there is a strong probability that he will be disturbed by noxious odors due to the use of formaldehyde in the summer months when the windows are open."

To the same effect, from the syllabi in *Rockenbach v. Apostle,* 330 Mich 338:

"Plaintiffs in suit to enjoin, as a nuisance, the establishment of a funeral home upon lots in blocks otherwise devoted to residential use *held,* to have fully established by the great weight of the evidence that such a place would have a depressing influence upon them and deprive them of the comfort and repose to which they are entitled in their nearby residences and that property values for residential purposes would be substantially depressed." Syllabus 7.

"It requires no expert opinion to reach the conclusion that a funeral home, as a constant reminder of death, has a depressing influence upon most people in view of the presence of funerals, hearses, coffins, the keeping of dead bodies on the premises, the comings and goings of bereaved persons; it being unnecessary to show danger from disease or unpleasantness of odors arising from such business in order to enjoin it." Syllabus 8.

Proof of allegations in plaintiffs' bill of complaint here as to the depressing effect of wrecked automobiles and the junk yard in a residential area would seem to bring the case within the spirit of the tests set forth in the quoted syllabi language in *Saier* and in *Rockenbach.*

It is evident from what the trial court said above that it was holding that defendants' business was a legitimate one and that as such it may not, under the cited authorities, be enjoined as a nuisance by way

of anticipation, except in a strictly residential area. The court then found that the area is not strictly residential and, hence, that an anticipatory nuisance there may not be enjoined. It was required, however, for purposes of the motion, that the well-pleaded allegations of the bill be accepted as true. It alleges that the immediate vicinity of defendants' premises is residential, with some light commercial activity some distance away. Accepting this as true, under the trial court's apparent view of the law, the motion to dismiss should not have been granted.

In *Township of Garfield* v. *Young,* 348 Mich 337, a suit to enjoin operation of a junk yard, this Court said (p 342):

"The question in each case is one of fact, and in each case we must consider the facts peculiar to that particular case."

Here plaintiffs never had a chance to try their case and to prove what they alleged are the facts as to the character of the neighborhood and the harmful incidents and effects of the car salvaging business which must necessarily follow from its operation.

In *Culy* v. *Upham,* 135 Mich 131 (106 Am St Rep 388), and *Crocker* v. *Crocker,* 362 Mich 6, this Court commented on the necessity for a record, such as usually is available only after full trial, setting forth testimony and proofs sufficient to enable this Court to decide, *de novo,* all the issues essential to proper disposition of the case on the merits. That is lacking here. We think the case should be tried and proofs submitted such as will enable the trial court, and this one on appeal, to determine the character of the neighborhood in question, and the effects that operation of the contemplated business in all probability will have on it and those residing therein. The bill of complaint is sufficient to warrant this. Whether a full or partial injunction, or any at all, should follow

may then be determined in accord with what the facts indicate.

Reversed and remanded for trial. Costs to plaintiffs.

CARR, C. J., and KELLY, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.