## KEISWETTER v CITY OF PETOSKEY

Docket No. 60779. Submitted October 5, 1982, at Lansing.—Decided April 5, 1983. Leave to appeal denied, 417 Mich __.

J. D. Keiswetter, Mary F. Keiswetter, and numerous other owners of real property zoned for residential use filed an action in Emmet Circuit Court against the City of Petoskey seeking to enjoin the construction of a fire training facility tower on property leased by the city, alleging that the tower was not a permitted use in the single family residential district and the operation and maintenance of the facility would constitute a nuisance in fact. The court, Martin B. Breighner, J., granted summary judgment for the defendant, finding that the defendant was exempt from the effect of the zoning ordinance because the construction and operation of a fire training center fell within the classification of a governmental function and declining to grant injunctive relief on the anticipatory nuisance claim. The plaintiffs appealed. *Held:*

1. The trial court correctly held that, because the construction, operation, and maintenance of a fire training facility is a governmental function, the defendant was not bound by the provisions of its zoning ordinance.

2. The plaintiffs' complaint sufficiently set forth a cause of action for a nuisance in fact. The allegations contained therein, if proved, would amount to an intentional invasion of the plaintiffs' residential area with the defendant's knowledge that substantial harm would likely result. The trial court erred in granting summary judgment for the defendant regarding the claim of an alleged nuisance in fact.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading §§ 229, 230.

[2, 3] 82 Am Jur 2d, Zoning and Planning §§ 149, 151.
Applicability of zoning regulations to governmental projects or activities. 61 ALR2d 970.

[4] 58 Am Jur 2d, Nuisances § 5.

[5] 58 Am Jur 2d, Nuisances § 32.

[6] 58 Am Jur 2d, Nuisances § 153.

[7] 58 Am Jur 2d, Nuisances § 175

1. JUDGMENTS — SUMMARY JUDGMENT — MOTIONS — FAILURE TO
   STATE CLAIM — PLEADINGS — IMMUNITY FOR SUIT — COURT
   RULES.
   The Court of Appeals, on review of a motion for summary
   judgment on the ground that the opposing party has failed to
   state a claim upon which relief can be granted, accepts as true
   all of the nonmoving party's factual allegations as well as any
   conclusions which can reasonably be drawn therefrom and
   determines whether the nonmoving party's claim, on the plead-
   ings, is so clearly unenforceable as a˙ matter of law that no
   factual development can possibly justify a right to recovery
   (GCR 1963, 117.2[1]).

2. ZONING — GOVERNMENTAL IMMUNITY.
   A governmental unit is immune from the effect of its zoning
   ordinance if its use of the subject property is in the furtherance
   of a governmental rather than a proprietary function or if the
   proposed governmental projects are expressly exempt by the
   terms of the zoning ordinance.

3. ZONING — GOVERNMENTAL IMMUNITY — FIRE FIGHTING.
   The training of fire fighters involves a governmental function and
   a city's construction of a fire training facility is a governmental
   function exempting the city from the strictures of a zoning
   ordinance which would otherwise prohibit such use of the
   property.

4. NUISANCE — CLASSES OF NUISANCE.
   There are three classes of actionable nuisances sounding in tort:
   (1) conduct which is a violation of law (nuisance per se); (2)
   nuisances which have their origin in negligence; and (3) an
   intentional act in which the actor intended to create the
   condition which is found to be a nuisance (nuisance in fact, or
   absolute nuisance).

5. NUISANCE — INTENTIONAL CONDUCT.
   A person's conduct is "intentional" for purposes of a nuisance in
   fact where the person intended to bring about the situation
   which was determined to be a nuisance in fact and the person's
   conduct exceeded ordinary negligence because his actions were
   of a magnitude that were equivalent to invitations to injuries
   or indifference to the consequences.

6. NUISANCE — EQUITY.
   Equity will not enjoin an injury which is merely anticipated nor
   interfere where an apprehended nuisance is doubtful, contin-
   gent, conjectural, or problematical; an injunction may issue to

prevent a threatened or anticipated nuisance which will necessarily result from the contemplated act, where the nuisance is a practically certain or strongly probable result or a natural or inevitable consequence.

7. TRIAL — INJUNCTIONS — NUISANCE.

There should be a full trial on an action to enjoin the construction and operation of a fire training facility tower on certain property where the plaintiff has alleged facts which, if proved, would show the residential character of the neighborhood and the deleterious effects that operation of the fire tower would, in all probability, have on it and those residing therein.

*Stroup & Brown, P.C.* (by *Nathanial W. Stroup),* for plaintiffs.

*Wayne R. Smith,* for defendant.

Before: BEASLEY, P.J., and M. J. KELLY and W. S. WHITE,* JJ.

BEASLEY, P.J. On July 14, 1981, plaintiffs, owners of real property zoned for residential use, filed a complaint for injunctive and declaratory relief against defendant, City of Petoskey, seeking to enjoin the construction of a fire training facility tower. On October 16, 1981, the trial court granted defendant's motion for summary judgment grounded upon GCR 1963, 117.2(1). From this order, plaintiffs appeal as of right.

In their complaint, plaintiffs alleged that defendant leased land located in a single family residential zoning district for the purpose of constructing and maintaining a tower for the training of fire fighters. Plaintiffs sought to enjoin the construction, operation, and maintenance of the proposed facility on the bases that (1) under the zoning ordinance of the City of Petoskey, the proposed fire training center was not a permitted use in the

* Circuit judge, sitting on the Court of Appeals by assignment.

single family residential district, and (2) the operation and maintenance of the facility would constitute a nuisance in fact.

In its answer to plaintiffs' complaint, defendant stated that it is exempt from the operation of the zoning ordinance since the construction, operation, and maintenance of a facility for the education and instruction of fire department personnel is a necessary, important governmental function. Furthermore, defendant asserted that the alleged nuisance was anticipatory and conjectural; thus, as a matter of law, the construction of the facility could not be enjoined.

In a detailed written opinion, the trial court held that defendant was exempt from the effect of the zoning ordinance because the construction and operation of a fire training center fell within the classification of a governmental function. In declining to grant injunctive relief regarding the anticipatory nuisance, the trial court stated:

"It may develop, when the construction of the fire training center is completed and when such center is in operation, that that fire center will be operated in such a way as to constitute a nuisance in fact. This will be a question of fact to be determined on the basis of a record to be established from the actual operation of such fire fighting center. At the present time, however, when the fire center is not yet completed and has not yet been made operational, it would be inappropriate for this Court to extend its injunctive power to enjoin a use which has not been demonstrated to be a nuisance in fact."

A motion for summary judgment under GCR 1963, 117.2(1) is the modern equivalent of a demurrer under common-law pleading,[1] which more

---

[1] 7 Callaghan's Michigan Pleading & Practice (2d ed), § 43.04a, p 8.

recently has been designated as a motion to dismiss. The test is whether, on the pleadings, plaintiff's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery.[2] All well-pleaded allegations in the complaint are assumed to be true.[3]

In determining the correctness of the award to defendant of summary judgment, the first issue for our consideration is whether defendant is bound by the provisions of its zoning ordinance. It is undisputed that the area in which the proposed fire training center will be situated is limited by the city zoning ordinance to single family residential homes.

In *Mainster v West Bloomfield Twp,*[4] this Court, based on the decision in *Taber v Benton Harbor,*[5] held that a governmental unit is immune from the effect of its zoning ordinance if its use of the subject property is in the furtherance of a governmental, rather than a proprietary, function or if the proposed governmental projects are expressly exempt by the terms of the zoning ordinance.[6]

In the matter at bar, the zoning ordinance does not contain a provision which exempts defendant from the terms therein. Nevertheless, as the *Mainster* case delineated, if the municipality's violated use of the subject property is in pursuance of a governmental function, it would be exempt from

[2] *Armstrong v Ross Twp,* 82 Mich App 77, 81-82; 266 NW2d 674 (1978); *Littsey v Wayne State University,* 108 Mich App 406, 417-418; 310 NW2d 399 (1981).

[3] *Bielski v Wolverine Ins Co,* 379 Mich 280, 283; 150 NW2d 788 (1967).

[4] 68 Mich App 319, 325-327; 242 NW2d 570 (1976).

[5] 280 Mich 522; 274 NW 324 (1937).

[6] For a comprehensive article concerning the effect of zoning regulations on governmental projects, see Anno: *Application of zoning regulations to governmental projects or activities,* 61 ALR2d 970 (1958).

the strictures of the ordinance. In *Dionne v Detroit,*[7] this Court held that the training of police officers constituted a governmental function. Similarly, we hold here that the training of fire fighters involves a governmental function. Thus, we conclude that the trial court properly held that, since the construction, operation, and maintenance of a fire training facility is a governmental function, defendant was not bound by the provisions of its zoning ordinance.

The second, and more difficult, issue is whether the trial court erred in denying plaintiffs an evidentiary hearing pertaining to their allegations that the proposed fire training tower constituted a nuisance in fact.

In *Denny v Garavaglia,*[8] the Supreme Court, in quoting with approval from *Beckwith v Town of Stratford,*[9] described three classes of actionable nuisances: (1) conduct which is a violation of law (nuisance per se); (2) nuisances which have their origin in negligence; and (3) an intentional act in which the actor intended to create the condition which is found to be a nuisance (nuisance in fact, or absolute nuisance).

A comprehensive definition of "nuisance" is found at 4 Restatement Torts, 2d, § 821A, pp 85-86:

"b. *Meaning of 'nuisance.'* The term frequently is used in several different senses. In popular speech it often has a very loose connotation of anything harmful, annoying, offensive or inconvenient, as when it is said that a man makes a nuisance of himself by bothering others. Occasionally this careless usage has crept into a court opinion. If the term is to have any definite legal

---

[7] 79 Mich App 239, 246; 261 NW2d 273 (1977). See, generally, 57 Am Jur 2d, Municipal, School, and State Tort Liability, §§ 265, 266, pp 227-230.

[8] 333 Mich 317, 331; 52 NW2d 521 (1952).

[9] 129 Conn 506; 29 A2d 775 (1942).

significance, these cases must be completely disregarded.

"In its legal significance, 'nuisance' has been employed in three different senses:

"(1). It is often used to denote human activity or a physical condition that is harmful or annoying to others. Thus it is often said that indecent conduct or a rubbish heap or the smoking chimney of a factory is a nuisance.

"(2). It is often used to denote the harm caused by the human conduct or physical condition described in the first meaning. Thus it may be said that the annoyance caused by loud noises or by objectionable odors is a nuisance to the person affected by them.

"When the word is used in either of these two senses it does not necessarily connote tort liability. The courts that use the word in either sense will often proceed to discuss whether the particular 'nuisance' is actionable and may conclude that it is not.

"(3). Often, however, the term has been used to denote both the conduct or condition and the resulting harm with the addition of the legal liability that arises from the combination of the two. Thus the courts may say that a person is maintaining a nuisance, meaning that he is engaged in an activity or is creating a condition that is harmful or annoying to others and for which he is legally liable; or they may distinguish between a 'nuisance per se,' meaning harmful conduct of a kind that always results in liability and a 'nuisance per accidens,' meaning harmful conduct that results in liability only under particular circumstances."

In *Delaney v Philhern Realty Holding Co,*[10] the New York Court of Appeals held that an absolute nuisance (nuisance in fact) results from wrongful, intentional conduct, such as performing an act without securing a proper permit, whereas a nuisance grounded in negligence occurs from an act performed in a negligenct manner. The Connecticut Supreme Court has defined an absolute nui-

---

[10] 280 NY 461; 21 NE2d 507 (1939).

sance as a condition created by "inherently and immediately dangerous" conduct.[11]

When using the term "intentional conduct" in regard to a nuisance in fact, courts appear to hold that the actor intended to bring about the situation which was determined to be a nuisance in fact.[12] Examples of nuisances in fact are the improper storing of sulfur material on another's land which causes corrosion and damage thereon,[13] the failure to guard or designate a vast decline at the end of a public alley,[14] and the maintenance of a diving board above shallow water.[15] The underlying theme of these cases is that the actors' conduct exceeded ordinary negligence, as their actions were of a magnitude that were equivalent to invitations to injuries or indifference to the consequences.

The following definition of the "intentional invasion or act" element of a nuisance in fact is illuminating:

"To be 'intentional,' an invasion of another's interest in the use and enjoyment of land, or of the public right, need not be inspired by malice or ill will on the actor's part toward the other. An invasion so inspired is intentional, but so is an invasion that the actor knowingly causes in the pursuit of a laudable enterprise without any desire to cause harm. It is the knowledge that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional. It is not enough to make an invasion intentional that the actor realizes

[11] *Bacon v Rocky Hill,* 126 Conn 402; 11 A2d 399 (1940).

[12] See, *e.g., Beckwith v Stratford, supra; Flaherty v Great Northern R Co,* 218 Minn 488; 16 NW2d 553 (1944).

[13] *Associated Metals & Minerals Corp v Dixon Chemical & Research, Inc,* 82 NJ Super 281; 197 A2d 569 (1971).

[14] *Baker v Wheeling,* 117 W Va 362; 185 SE 842 (1936).

[15] *Hoffman v City of Bristol,* 113 Conn 386; 155 A 499; 75 ALR 1191 (1931).

or should realize that his conduct involves a serious risk or likelihood of causing the invasion. He must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his conduct. For a special application of the general rule of § 826 to the case in which the actor desires to produce the invasion, see § 829."[16]

The pertinent part of plaintiffs' complaint reads as follows:

"4. That plaintiffs are informed and do believe that defendant leased the aforesaid Fire Training Center Parcel for the purpose of constructing and maintaining a fire training tower, which, during periods of operation, would involve the setting of fires, the generation of smoke, the use of water from fire hoses and various types of chemical fogs, sprays and foams and would be used by firemen from not only the City of Petoskey but from other townships and municipalities, together with the use and employment of fire trucks, equipment, machinery, apparatus which would cause noise, odor, fumes, smoke, fire, traffic congestion and tumult.

* * *

"11. By reason of the threatened and contemplated noise, odor, fumes, smoke, fire, traffic congestion and tumult, the said fire training center tower and the use intended to be made of it by the City of Petoskey will constitute a nuisance in fact if allowed to be constructed and will be dangerous, offensive and disruptive to the peace and tranquility of the neighborhood."

We find that plaintiffs' complaint sufficiently sets forth a cause of action for a nuisance in fact. The allegations contained therein, if proved, amount to an intentional invasion of plaintiffs' residential area with knowledge on defendant's part that substantial harm is likely to result.

[16] 4 Restatement Torts, 2d, § 825, Comment C, p 118.

In *Falkner v Brookfield,*[17] the Supreme Court discussed the inherent power of an equity court in regard to anticipatory nuisances:

"From the cited authorities and others it appears that equity will not enjoin an injury which is merely anticipated nor interfere where an apprehended nuisance is doubtful, contingent, conjectural or problematical. A bare possibility of nuisance or a mere fear or apprehension that injury will result is not enough. On the other hand, an injunction may issue to prevent a threatened or anticipated nuisance which will necessarily result from the contemplated act, where the nuisance is a practically certain or strongly probable result or a natural or inevitable consequence."

On appeal, consistent with its position in the summary judgment motion, defendant relies primarily on *Brent v Detroit,*[18] where the plaintiffs, who were property owners in Detroit, petitioned the trial court for injunctive relief to enjoin the defendant city from erecting an outdoor swimming pool at a location over 400 feet from plaintiffs' nearest property. The plaintiffs claimed that construction of the pool at the selected site would constitute a public nuisance and that more feasible locations existed for the pool.

In upholding the trial court's grant of summary judgment to the defendant, the *Brent* Court stated:[19]

"Courts are reluctant to enjoin anticipatory nuisances absent a showing of actual nuisance or the strong probability of such result. * * * This has been true with proposed uses of children's playgrounds and park areas. * * * It is especially true in cases where anticipatory

[17] 368 Mich 17, 23; 117 NW2d 125 (1962).
[18] 27 Mich App 628; 183 NW2d 908; 49 ALR3d 648 (1970).
[19] *Id.,* pp 631-632.

nuisance claims have been leveled against proposed municipal swimming pool sites. * * *

"This is not to say that such swimming pool is forever insulated from becoming a nuisance. However, plaintiffs have pleaded nothing at this time which indicates that increased noise, traffic and parking problems will necessarily result with its construction." (Citations omitted.)

Unlike the factual setting in *Brent, supra,* where the plaintiffs did not claim that increased noise, traffic, and parking problems would result from the construction and operation of a municipal swimming pool, plaintiffs herein alleged that as a consequence of the construction and operation of the fire tower on the subject property, noise, odor, and other adverse effects would result from the existence of the fire tower in their residentially zoned district. We, therefore, conclude that the trial court erred in granting defendant's motion for summary judgment concerning the alleged nuisance in fact. To this effect, the language contained in *Falkner, supra,* is instructive:[20]

"Here plaintiffs never had a chance to try their case and to prove what they alleged are the facts as to the character of the neighborhood and the harmful incidents and effects of the car salvaging business which must necessarily follow from its operation.

"In *Culy v Upham,* 135 Mich 131 (106 Am St Rep 388), and *Crocker v Crocker,* 362 Mich 6, this Court commented on the necessity for a record, such as usually is available only after full trial, setting forth testimony and proofs sufficient to enable this Court to decide, *de novo,* all the issues essential to proper disposition of the case on the merits. That is lacking here. We think the case should be tried and proofs submitted such as will enable the trial court, and this one on

---

[20] *Falkner, supra,* pp 25-26. See, generally, Prosser, Torts (4th ed), § 90, p 603.

appeal, to determine the character of the neighborhood in question, and the effects that operation of the contemplated business in all probability will have on it and those residing therein. The bill of complaint is sufficient to warrant this. Whether a full or partial injunction, or any at all, should follow may then be determined in accord with what the facts indicate."

Accordingly, we reverse and remand this cause for a hearing on plaintiffs' anticipatory nuisance claim.

Reversed and remanded.