SANFORD v CITY OF DETROIT

Docket No. 78049. Submitted December 19, 1984, at Detroit.—Decided
May 21, 1985. Leave to appeal applied for.

Mary Sanford filed suit against the City of Detroit in Wayne
Circuit Court alleging that she was sexually assaulted in an
abandoned factory building owned by defendant. Defendant
moved for summary judgment, arguing that plaintiff's com-
plaint sounded in both negligence and intentional nuisance and
that it could not be held liable under either theory. At the
hearing on defendant's motion plaintiff stated that she in-
tended to complain only of defendant's alleged intentional
nuisance, not negligence. The court, Michael L. Stacey, J.,
granted defendant's motion for summary judgment, stating
that there was no cause for the lawsuit. Plaintiff appealed.
*Held:*

Plaintiff's complaint sufficiently alleged that a building
owned by defendant interfered with the public safety and that
defendant failed to take reasonable steps to abate the condi-
tions causing the building to be a threat to public safety.
Plaintiff sufficiently pled an intentional nuisance to withstand
defendant's motion for summary judgment.

Reversed and remanded.

SHEPHERD, J., dissented. He would hold that plaintiff failed to
state a claim of intentional nuisance because the danger was
created by the assailant, not the building itself or defendant's
alleged failure to secure the building. Aside from the question
of governmental immunity, he would affirm because defendant
had no duty to the plaintiff, in the absence of any special
relationship such as a landlord/tenant or invitor/invitee rela-

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading §§ 71 et seq., 226, 230 et seq.
[2] 58 Am Jur 2d, Nuisances § 32.
[3, 5] 58 Am Jur 2d, Nuisances § 212 et seq.
[4] 58 Am Jur 2d, Nuisances §§ 7, 106 et seq.
[6] 58 Am Jur 2d, Nuisances § 1.
[7] 6 Am Jur 2d, Assault and Battery § 126 et seq.
[8] 57 Am Jur 2d, Negligence § 6.
[9] 57 Am Jur 2d, Negligence § 34.

tionship. He feels that landowners should not be held responsible to victims of crime, unless the Legislature declares so by law.

### OPINION OF THE COURT

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE A CLAIM — COURT RULES.

The test, in considering a motion for summary judgment on the ground that the plaintiff failed to state a cause of action, is whether, on the pleadings alone, the plaintiff's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery (GCR 1963, 117.2[1]).

2. NUISANCE — INTENTIONAL NUISANCE.

An intentional nuisance, or a nuisance in fact, is one which becomes a nuisance by reason of circumstances and surroundings; an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property.

3. NUISANCE — INTENTIONAL NUISANCE — KNOWLEDGE OF ACTOR.

A person's knowledge at the time he acted or failed to act determines whether the invasion resulting from his conduct is intentional or unintentional for purposes of proving a nuisance in fact; the person must realize, or should realize, that his conduct involves a serious risk or likelihood of causing the invasion and must either act for the purpose of causing it or know that it is resulting or substantially certain to result from the conduct.

4. NUISANCE — PUBLIC NUISANCE.

A public nuisance is an unreasonable interference with a right common to the general public; circumstances that may sustain a holding that an interference with a public right is unreasonable include the following: (1) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or (2) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or (3) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

5. NUISANCE — POSSESSORS OF LAND — ABATABLE ARTIFICIAL CONDITIONS.

A possessor of land is subject to liability for a nuisance for an

abatable artificial condition on the land if (1) he knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, (2) he knows or should know that it exists without the consent of those affected by it, and (3) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it.

DISSENT BY SHEPHERD, J.

6. NUISANCE — DEFINITION.

*A nuisance is a condition and not an act or failure to act.*

7. ASSAULT AND BATTERY — LIABILITY OF PROPERTY OWNERS — SPECIAL RELATIONSHIPS.

*A property owner in Michigan is liable, in limited circumstances, for foreseeable harm to persons on his premises from assaults committed by third parties; however, the duty to prevent the harm hinges upon the existence of a special relationship between the property owner and the injured party, such as a landlord and tenant or invitor and invitee relationship.*

8. NEGLIGENCE — REASONABLENESS — JURY QUESTION.

*The issue in negligence actions of whether the care exercised was reasonable under the circumstances is for the jury to determine.*

9. NEGLIGENCE — DUTY — QUESTIONS OF LAW — SUMMARY JUDGMENT.

*The existence of a duty in negligence actions is ordinarily a question of law and summary judgment for the defendant is appropriate where the trial judge resolves the legal question of the defendant's duty against the plaintiff.*

*Bockoff & Zamler, P.C.* (by *Glen Hirshberg* and *John J. Futchko*), for plaintiff.

*Brenda M. Miller,* Assistant Corporation Counsel, for defendant.

Before: BRONSON, P.J., and HOOD and SHEPHERD, JJ.

PER CURIAM. Plaintiff appeals as of right from the trial court's April 18, 1984, order granting

defendant's motion for summary judgment and dismissing plaintiff's action.

Plaintiff alleged that she was sexually assaulted on March 3, 1979, in an abandoned factory building owned by defendant. Her assailant took her to that location. Plaintiff further alleged:

"5. That it was then and there that the duty and responsibility of the Defendant to maintain their premises in such a manner and in such a condition so as to not endanger the Plaintiff's and similarly situated person's [sic] health, safety, and welfare.

"6. That the City of Detroit, its agents, servants or employees, knew or should have known that the building was vacant and accessible for criminal activity and that it constituted an inherently dangerous condition, but the City of Detroit neglected, failed and refused to adequately secure the building, failed to demolish the empty abandoned building, failed to patrol or guard said premises or take any steps whatsoever, to remove, repair or eliminate this inherently dangerous condition.

"7. That the Defendant, CITY OF DETROIT, had reasonable notice that abandoned buildings were used for the purpose of perpetrating activities such as that which the Plaintiff was subjected to; and that Defendant had notice that the aforesaid premises also constituted such a danger; and it knew or should have known that assailants seek places away from the public sight to take their victims, and further, that the aforesaid abandoned building was a nuisance in fact and created an extremely dangerous and hazardous condition for the public, but the Defendant negligently failed and refused to take any steps whatsoever to secure the building, to patrol or guard said premises, or to employ any other means to safeguard the premises from the danger which was the proximate cause of the injuries suffered by the Plaintiff, MARY SANFORD.

"8. The Defendant is liable for the injuries of the Plaintiff as it intentionally created the nuisance in fact which resulted in injuries to the Plaintiff."

In its motion for summary judgment, which

defendant stated it brought pursuant to GCR 1963, 117.2(1) and (3), defendant argued that plaintiff's complaint sounded in both negligence and intentional nuisance. Defendant argued that it could not be held liable for negligence under plaintiff's allegations because its acts or omissions were not the proximate cause of plaintiff's injuries. Moreover, defendant asserted that it had not created an intentional nuisance by allegedly failing to secure and maintain the building in which plaintiff was attacked. Finally, defendant argued that plaintiff failed to allege facts supporting any finding that defendant owed a duty of care to plaintiff.

At the hearing on defendant's motion the trial court recognized plaintiff's responsive argument that she only intended to complain of defendant's alleged intentional nuisance, not negligence. Defendant's counsel then presented her argument. In response, plaintiff's counsel briefly argued that proximate cause was not an issue in an intentional nuisance action. Plaintiff's counsel also briefly reiterated some of the allegations in the complaint.

The trial court granted defendant's motion. Plaintiff's counsel asked if there was an explanation. The trial court responded:

"Sure. As a matter of law, there is no possible cause for a lawsuit. If I'm wrong, the Court of Appeals will tell me."

We reverse.

It is clear from the trial court's comments that this motion was granted under GCR 1963, 117.2(1), failure to state a cause of action. In considering such a motion, the test is whether, on the pleadings alone, plaintiff's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Arm-*

*strong v Ross Twp,* 82 Mich App 77, 81-82; 266 NW2d 674 (1978).

An intentional nuisance, or a nuisance in fact, is one which becomes a nuisance "by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property". *Rosario v City of Lansing,* 403 Mich 124, 133; 268 NW2d 230 (1978), quoting 66 CJS, Nuisances, § 3, pp 733-734; *McKee v Dep't of Transportation,* 132 Mich App 714, 725; 349 NW2d 798 (1984). The knowledge of the actor at the time he or she acted or failed to act determines whether the invasion resulting from the actor's conduct is intentional or unintentional. The actor must realize, or should realize, that his or her conduct involves a serious risk or likelihood of causing the invasion and must either act for the purpose of causing it or know that it is resulting or substantially certain to result from the conduct. 4 Restatement Torts, 2d, § 825, Comment C, p 118; *Keiswetter v City of Petoskey,* 124 Mich App 590, 597-598; 335 NW2d 94 (1983).

In 4 Restatement Torts, 2d, § 821B, p 87, the American Law Institute defines a public nuisance as follows:

"(1) A public nuisance is an unreasonable interference with a right common to the general public.

"(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:

"(a) Whether the conduct involves a significant interference with the public health, *the public safety, the public peace,* the public comfort or the public convenience, or

"(b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or

"(c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public rights". (Emphasis added.)

Furthermore, the possessor of land is subject to liability for a nuisance for an abatable artificial condition on the land if, .

"(a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and

"(b) he knows or should know that it exists without the consent of those affected by it, and .

"(c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it". 4 Restatement Torts, 2d, § 839, p 161.

Plaintiff alleged that defendant had notice that abandoned buildings were used for crimes such as the one that occurred to plaintiff and knew that the building at issue posed such a danger, yet failed or refused to secure the building or to guard it or to take any steps at all to safeguard the premises from such known criminal activity. These facts sufficiently allege a building that interferes with the public safety and that defendant failed to take reasonable steps to abate the conditions causing the building to be a threat to public safety. Therefore, we find that plaintiff sufficiently pled an intentional nuisance to withstand this GCR 1963, 117.2(1) motion for summary judgment.

Reversed and remanded.

SHEPHERD, J. (dissenting). Plaintiff alleges that she was raped in a vacant building owned by defendant, that defendant "knew or should have known" that such buildings are used for criminal

activity, including assaults such as plaintiff alleg-
edly experienced, that defendant "neglected, failed
and refused" to secure, demolish or guard the
premises, and that defendant had reasonable no-
tice that such buildings are used by criminals as
sites to inflict harm "away from the public sight".
The majority conclude "that plaintiff pled an in-
tentional nuisance sufficient to withstand defen-
dant's motion for summary judgment". I disagree
with this conclusion. Plaintiff's complaint sounds
in negligence rather than nuisance. The majority's
holding constitutes a vast expansion of the "nui-
sance" exception to governmental immunity.
Moreover, it would subject virtually any land-
owner (public or private) to potential liability
whenever the landowner's premises are the site of
an assaultive offense. This, also, marks a huge
enlargement of the landowner's duty to guard
against such activity on the premises, an enlarge-
ment facilitated by the majority's application of
nuisance doctrine.

"Nuisance is a condition and not an act or
failure to act." 58 Am Jur 2d, Nuisances, § 3, p
557. As noted by the majority, nuisances in fact
"are those which become nuisances by reason of
circumstances and surroundings, and an act may
be found to be a nuisance as a matter of fact
where the natural tendency of the act is to create
danger and inflict injury on person or property".
66 CJS, Nuisances, § 3, pp 733-734; *Rosario v City
of Lansing*, 403 Mich 124, 133; 268 NW2d 230
(1978); *Bluemer v Saginaw Central Oil & Gas
Service, Inc*, 356 Mich 399, 411; 97 NW2d 90
(1959). Heretofore, the courts of this state have
found a nuisance only where the injury was in-
flicted, not by a third party, but as a result of
some condition of, or the owner's activity on, the
property itself. For example, the nuisance in *Ro-*

*sario* was an open sewer drain; in *Bluemer,* a trap door in a service station; in *McKee v Dep't of Transportation,* 132 Mich App 714; 349 NW2d 798 (1984), the design of a highway shoulder and the placement of a light pole proximate thereto; and in *Keiswetter v City of Petoskey,* 124 Mich App 590; 335 NW2d 94 (1983), the operation of a fire training facility tower.

In this case there was no natural tendency of the building to create the danger. The danger was created and the injury inflicted by the assailant. The building itself posed no danger to plaintiff's life or health and, therefore, did not constitute a nuisance. The entity which created the danger to plaintiff's life and health was the assailant, not the building in which plaintiff was attacked.

The nuisance exception to the doctrine of governmental immunity "is a word chosen by courts to avoid the harshness of some legal principles without really casting those principles out". *Disappearing Lakes Ass'n v Dep't of Natural Resources,* 121 Mich App 61, 65; 328 NW2d 570 (1982), aff'd 420 Mich 567; 363 NW2d 641 (1984). Despite plaintiff's protestations to the contrary in circuit court, she is advancing a negligence claim, but simply calling it a "nuisance" claim to avoid a possible immunity defense.[1] We should not rewrite or reinterpret the complaint to match the intent requirement for an intentional nuisance. The majority state that plaintiff alleged that defendant had notice that *its* abandoned buildings were used for crimes

---

[1] At oral argument, defense counsel conceded its ownerhsip of the building as a result of donation was a "proprietary" rather than a governmental function, MCL 691.1407; MSA 3.996(107), and that the city has the same liability as a private landowner. After oral argument the Supreme Court released its decision in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), in which it defined "propriety function" as "any activity conducted primarily for pecuniary profit". 420 Mich 591. In any event, the issue is not presented by this appeal.

such as the one that occurred to plaintiff. Actually, plaintiff alleged that defendant had notice that abandoned buildings *generally* were used for criminal purposes, not that defendant had notice with respect to the buildings in question.[2] This discrepancy aside, nowhere in her complaint does plaintiff allege that defendant either acted for the purpose of causing the harm or knew the harm was "substantially certain" to follow. *Keiswetter, supra.* This is a negligence claim, pure and simple. Accepting plaintiff's allegations as true, defendant was negligent in not securing the premises despite a known danger. However, even aside from the question of governmental immunity, I would hold that defendant cannot be held liable for the alleged failure to secure the building in this case.

We should not inflate the nuisance exception to a previously inconceivable volume, nor should we overlook the effect this holding will have on the potential liability of private landowners. We should not forget that anything said in a decision in a "nuisance" case with a governmental defendant may, indeed will, be applied to nongovernmental defendants as well. In Michigan, the landowner is liable, in limited circumstances, for foreseeable harm to persons on his premises from assaults committed by third parties. *Samson v Saginaw Professional Building, Inc,* 393 Mich 393; 224 NW2d 843 (1975); *Askew v Parry,* 131 Mich App 276; 345 NW2d 686 (1983). Nevertheless, the duty to prevent the harm hinges upon the existence of a special relationship between the landowner and the plaintiff, such as a landlord/tenant

[2] The record shows that the city had been warned by one of its departments that the building should be made secure. However, the warning related to the danger of people injuring themselves on the premises—not the danger of third parties perpetrating assaults. Nor was there any evidence that the structure had been used as a crime site.

or invitor/invitee relationship. *Samson, supra,* p 406; *Askew, supra,* p 279. See, also, *Blake v Consolidated Rail Corp,* 129 Mich App 535; 342 NW2d 599 (1983); *Aisner v Lafayette Towers,* 129 Mich App 642; 341 NW2d 852 (1983), *lv den* 419 Mich 871 (1984).

There is no special relationship between plaintiff and defendant herein. By its application of nuisance doctrine the majority, in effect, create a duty where none previously existed. Apparently, a landowner will now have a duty to the general public to protect against foreseeable assaults perpetrated by a third party. Since the issue of "[w]hether the care exercised was reasonable under the circumstances is for the jury to determine", *Samson, supra,* p 407, landowners will face full trials in many such cases. This will occur even though no previous assaults might have occurred on a given premises, *Aisner, supra,* pp 646-647, and even though the defendant has taken some action to secure the premises. The reasonableness and adequacy of the measures taken by the landowner would be submitted to a jury. *Moning v Alfono,* 400 Mich 425, 438; 254 NW2d 759 (1977).

As previously noted, there is no principled basis for restriction of the majority's holding to large vacant buildings owned by a municipality or even restricting it to buildings, as opposed to undeveloped land. Any unguarded premises used as a site for an assault could give rise to a suit against the owner. A homeowner who leaves for a vacation or a hospital stay might be sued if some brigand or rapist observes the owner's departure, breaks in, then forces some passerby onto the premises. This, even though the owner locks the doors. As indicated, the reasonableness of such measures would be for the jury.

The existence of a duty is ordinarily a question

of law. *Moning, supra,* p 438. Summary judgment
is appropriate when the question is resolved ad-
versely to the plaintiff. *Cook v Bennett,* 94 Mich
App 93, 98; 288 NW2d 609 (1979). In my view,
"overriding considerations of public policy" require
affirmance of the trial court's decision in this case.
*Moning, supra,* p 450. The problem of compensat-
ing victims of crime is a societal problem better
dealt with on a larger scale than case-by-case
adjudication. The underlying question presented
by this case is who will have the financial respon-
sibility to compensate victims of crime. Most per-
petrators of assaultive offenses do not have the
means of compensating their victims. The Legisla-
ture has created a scheme whereby some victims
are partly compensated. MCL 18.351 *et seq.;* MSA
3.372(1) *et seq.;* see, *Jerome v Crime Victims Com-
pensation Board,* 419 Mich 161; 350 NW2d 239
(1984). The adequacy of this scheme is a legislative
matter. The court should not apply an ad hoc
remedy based upon fortuitous circumstances, such
as the occurrence of an offense at an unguarded
building.

Criminals will always seek and find places
where they can commit offenses in covert fashion;
in plaintiff's words, "places away from the public's
sight to take victims". In all instances, someone
owns the land where the offense occurred. It serves
no useful purpose for judges to assign the task of
victim compensation to the owners of the premises
who themselves may thus become victims of crime.
I can visualize the plight of homeowners of modest
means who are accused in a civil suit of failing to
adequately secure a residence in a high-crime
area. If they are to lose their homes and all of
their savings to the victim of a rapist, I would
want the Legislature to declare by law that this is
a desirable way for society to address the break-

down of law and order. Moreover, I cannot agree that the owners of such places owe a duty to the general public to prevent crimes for which they are not truly responsible in any traditional sense. Therefore, I must respectfully dissent.