BLAKE v CONSOLIDATED RAIL CORPORATION

Docket No. 64948. Submitted April 6, 1983, at Lansing.—Decided
October 10, 1983.

Joan Blake, administratrix of the estate of Robert Blake, and
Virginia Burton, administratrix of the estate of Charles Burton,
brought an action in the Jackson Circuit Court against Consoli-
dated Rail Corporation (Conrail) and National Rail Passenger
Corporation (NRPC). Plaintiffs decedents, employees of Conrail,
were shot and killed by Rudy Bladel while working at National
Rail Passenger Corporation's Jackson, Michigan, depot. The
murders took place in an area of the depot restricted to
employees and authorized personnel. Plaintiffs' first cause of
action was an allegation of negligence brought under the
Federal Employers Liability Act against defendant Conrail.
Plaintiffs alleged that Conrail owed decedents the duty to
provide them with a safe place to work and breached that duty
by, among other things, (1) failing to protect its employees from
assaults by others, (2) failing to properly secure the restricted
area in which plaintiffs' decedents were shot, (3) failing to hire
sufficient security personnel to protect employees such as dece-
dents against known assailants such as Bladel, and (4) failing to
warn employees of unsafe and unguarded conditions at the
Jackson depot. Plaintiffs' second negligence count was brought
under the Michigan wrongful death act against NRPC as
owners or controllers of the Jackson depot. In that count,
plaintiffs alleged that the restricted area in which decedents
were shot was defective and presented an unreasonable risk of

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 521.

5 Am Jur 2d, Appeal and Error § 738.

[1, 2] 61A Am Jur 2d, Pleading §§ 71 *et seq.*, 230 *et seq.*

[3] 32 Am Jur 2d, Federal Employers' Liability and Compensation
Acts § 87 *et seq.*

[4] 32 Am Jur 2d, Federal Employers' Liability and Compensation
Acts §§ 12, 28.

[5] 49 Am Jur 2d, Landlord and Tenant § 773.5.

Landlord's obligation to protect tenant against criminal activities of
third persons. 43 ALR3d 331.

harm to the decedents. Plaintiffs alleged that defendant had a duty to provide security to the decedents, including a duty to protect them against criminal attacks by known assailants such as Bladel. Plaintiffs said NRPC breached that duty by, among other things, (1) failing to provide adequate security at the Jackson depot, (2) failing to warn both Conrail and plaintiffs' decedents of the lack of security and risks of harm from known assailants such as Bladel, and (3) negligently entrusting security functions to Conrail to protect decedents from such known and foreseeable risks. The court, Russell E. Nobel, J., granted a motion *in limine* to exclude all evidence at trial of any alleged activities of Rudy Bladel, criminal or otherwise, that occurred or may have occurred prior to the murders outside the City of Jackson. This motion did not specify particular documents or witnesses but referred generally to any written documents or testimony that plaintiffs might present regarding prior crimes or suspected assaults committed by Bladel against Conrail or Conrail's employees. The court also, *sua sponte,* ruled that plaintiffs could not present the testimony of an expert in security analysis for corporations engaged in industrial, transportation, and technological activities. The court held that the jury could decide what a reasonably prudent railroad would or should have done in this case. The court refused plaintiffs' motion to either stay proceedings pending an interlocutory appeal or dismiss without prejudice. The court then granted summary judgment for defendants when plaintiffs admitted that they could not present a prima facie case without the excluded evidence. Plaintiffs appealed. *Held:*

1. The court erred in not granting plaintiffs' motion to stay proceedings or dismiss.

2. The trial court in essence granted a summary judgment to defendants in excluding the testimony concerning Bladel's activities. The court found that defendants had no duty to protect decedents from Bladel's criminal assault. Review of a trial court's order excluding evidence is reviewed as if it were a grant of summary judgment for failure to state a claim where the issue involves review of the trial court's finding of no legal duty. A plaintiff in an action under the Federal Employers' Liability Act need show only the slightest causal nexus between the employer's negligence and the injury in order to recover. A railroad employer has a duty under the Federal Employers' Liability Act to make reasonable provisions to protect its employees against foreseeable criminal misconduct. Plaintiffs asserted a recognized legal duty and intended to present evi-

dence relative to their claim. The trial court abused its discretion in excluding the evidence *in limine.*

3. A possessor of land or property has a special relationship raising a duty to protect invitees. A possessor of land has a duty to protect tenants or their agents from unreasonable risk of physical harm, including protection from foreseeable intentional criminal acts of third parties. Plaintiffs stated a cause of action under the wrongful death act. The trial court erred in finding no cognizable legal duty and abused its discretion in its blanket exclusion *in limine* of evidence on that count.

4. The court erred in excluding plaintiffs' expert's testimony. Reversed and remanded.

1. APPEAL — EXCLUSION OF EVIDENCE — DUTY.

Review of a trial court's order excluding evidence is reviewed as if it were a grant of summary judgment for failure to state a claim where the issue involves review of the trial court's finding of no legal duty.

2. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM — COURT RULES.

A motion for summary judgment for failure to state a claim for which relief can be granted is tested by the pleadings alone and tests the legal basis of the complaint, not whether it can be factually supported; the factual allegations of the complaint are taken as true, along with any inferences or conclusions which may be fairly drawn from the facts alleged and, unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion should be denied (GCR 1963, 117.2[1]).

3. NEGLIGENCE — FEDERAL EMPLOYERS' LIABILITY ACT.

A plaintiff in an action under the Federal Employers' Liability Act need show only the slightest causal nexus between the employer's negligence and the injury in order to recover (45 USC 51 *et seq.*).

4. RAILROADS — FEDERAL EMPLOYERS' LIABILITY ACT — DUTY.

A railroad employer has a duty under the Federal Employers' Liability Act to make reasonable provisions to protect its employees against foreseeable criminal misconduct; criminal conduct may be foreseeable if an area is "frequented by dangerous characters", poorly lit, and unguarded.

5. LANDLORD AND TENANT — NEGLIGENCE — DUTY.

A possessor of land or property has a special relationship raising

a duty to protect invitees; a possessor of land has a duty to protect tenants or their agents from unreasonable risk of physical harm, including protection from foreseeable intentional criminal acts of third parties.

*Zabner & Associates, P.C.* (by *Jeffrey M. Zabner),* for plaintiffs.

*Frasko, Hackett & Durkin* (by *T. Patrick Durkin, Joseph J. McDonnell* and *William J. Richards),* for defendants.

Before: D. E. HOLBROOK, JR., P.J., and HOOD and T. M. GREEN,* JJ.

HOOD, J. Plaintiffs appeal as of right from the trial court's May 24, 1982, orders granting defendants' motion for summary judgment. GCR 1963, 117.2(1).

In their first amended complaint, filed October 13, 1981, plaintiffs alleged that Robert Blake and Charles Burton, employees of defendant Consolidated Rail Corporation (Conrail), were shot and killed by Rudy Bladel[1] while working on December 31, 1978, at defendant National Rail Passenger Corporation's (NRPC) Jackson, Michigan, depot. The murders took place in an area of the depot restricted to employees and authorized personnel.

Plaintiffs' first cause of action was an allegation of negligence brought under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.,* against defendant Conrail. Plaintiffs alleged that Conrail owed decedents the duty to provide them with a safe place to work and breached that duty

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] For disposition of the criminal prosecution against Bladel stemming from these murders see *People v Bladel,* 106 Mich App 397; 308 NW2d 230 (1981), and *People v Bladel (On Rem),* 188 Mich App 498; 325 NW2d 421 (1982).

by, among other things, (1) failing to protect its employees from assaults by others, (2) failing to properly secure the restricted area in which plaintiffs' decedents were shot, (3) failing to hire sufficient security personnel to protect employees such as Blake and Burton against known assailants such as Bladel, and (4) failing to warn employees of unsafe and unguarded conditions at the Jackson depot.

Plaintiffs' second negligence count was brought under the Michigan wrongful death act, MCL 600.2922; MSA 27A.2922, against NRPC as owner or controller of the Jackson depot. In that count, plaintiffs alleged that the restricted area in which Blake and Burton were shot was defective and presented an unreasonable risk of harm to decedents. Plaintiffs alleged that NRPC had a duty to provide security to Blake and Burton, including a duty to protect them against criminal attacks by known assailants such as Bladel. Plaintiffs said NRPC breached that duty by, among other things, (1) failing to provide adequate security at the Jackson depot, (2) failing to warn both Conrail and plaintiffs' decedents of the lack of security and risks of harm from known assailants such as Bladel, and (3) negligently entrusting security functions to Conrail to protect Blake and Burton from such known and foreseeable risks.

Following extensive discovery by plaintiffs, by which plaintiffs acquired police documents and defendants' internal security documents, defendants moved *in limine* to exclude all evidence at trial of any alleged activities of Rudy Bladel, criminal or otherwise, that occurred or may have occurred prior to December 31, 1978, outside the City of Jackson. This motion did not specify particular documents or witnesses but referred generally

to any written documents or testimony that plaintiffs might present regarding prior crimes or suspected assaults committed by Bladel against Conrail or Conrail's employees.

At the hearing on the motion *in limine,* plaintiffs' counsel argued that the evidence that defendants wished excluded went to the core of plaintiffs' theory that defendants knew of Rudy Bladel's violent propensities and vendetta against Conrail's Michigan branch employees. Proof of this knowledge was necessary to show that Bladel's assault against Blake and Burton was foreseeable by defendants.

Included in the evidence plaintiffs intended to present were documents and testimony regarding Bladel's 1971 conviction for assault of a Michigan branch Conrail employee in Indiana and a federal weapons possession conviction in 1978, stemming from Bladel's purchase of a gun in Elkhart, Indiana. Besides these actual criminal convictions plaintiffs intended to introduce at trial evidence showing that defendants knew that Bladel was strongly suspected of the 1963, 1968, and 1976 murders of other Michigan branch Conrail employees in Hammond and Elkhart, Indiana. Plaintiffs also intended to present evidence that defendants had in their possession, or knew of, a threatening letter written by Bladel in 1977 to a Niles, Michigan, Conrail employee, outlining his vendetta against Michigan branch employees. Lastly, plaintiffs intended to introduce documents and testimony regarding defendants' knowledge of Bladel's trespasses on railroad property in Elkhart, Indiana, and Niles and Porter, Michigan.

On February 18, 1982, the trial court filed its amended opinion granting defendants' motion *in limine.* In that opinion, the trial court stated that

none of the evidentiary material outlined above involved events which occurred closer geographically than approximately 100 miles west of Jackson. The court said that:

"No case has been cited which would place upon an employer-defendant a duty to foresee danger to its employees from third persons, including ex-employees, at a location so remote from the site of the nearest previous incident indicating the possibility of danger to employees."

While the trial court noted that FELA case law recognized an employer's duty to warn employees about dangerous conditions or areas of employment, the court said defendants did not have a duty to warn or notify employees of a potentially dangerous person.

In the same opinion granting defendants' motion *in limine,* the trial court *sua sponte* excluded the testimony of plaintiffs' expert witness, Jan Reber. According to Mr. Reber's affidavit, he was an expert and consultant in the area of security analysis for corporations engaged in industrial, transportation, and technological activities. He stated he had reviewed plaintiffs' discovery materials and, based upon the facts known to defendants, would express his opinion regarding the foreseeability of the Jackson murders and what reasonable security measures defendants could have taken to prevent those murders.

The trial court noted that Mr. Reber's conclusions would embrace ultimate issues to be decided by the jury, but such was permissible under MRE 704. However, the trial court excluded Mr. Reber's testimony on a finding that his opinion was not necessary because the jury could decide what a

reasonably prudent railroad would, or should, have done in this case.

On the date trial was to commence, March 15, 1982, plaintiffs moved for a stay of proceedings so that they could pursue an interlocutory appeal of the court's grant of defendants' motion *in limine* or, in the alternative, for a dismissal without prejudice. The trial court denied both motions. Plaintiffs argued that exclusion of all evidence of Bladel's conduct prior to December 31, 1978, eviscerated their cause of action and was, in effect, a grant of summary judgment. Defendants agreed to move for summary judgment because plaintiffs conceded that they could not present a prima facie case without the excluded evidence. The trial court granted defendants' motion for summary judgment.

Plaintiffs argue in this appeal that the trial court erred by granting defendants' motion for summary judgment and abused its discretion by granting the defendants' motion *in limine* excluding all evidence of Bladel's suspected and criminal activities prior to December 31, 1978, the defendants' knowledge of such activities, and expert Jan Reber's testimony.

We agree that procedurally the trial court should properly have granted plaintiffs' motion to stay or dismiss. However, we also agree that the trial court, in essence, granted a summary judgment to defendants in its opinion and order granting defendants' motion *in limine* because it found, as a matter of law, that defendants had no duty to protect Blake and Burton from Rudy Bladel's criminal assault at the Jackson, Michigan, depot.

While we review an issue involving a trial court's exclusion of evidence under an abuse of discretion standard, *Anderson v Harry's Army*

*Surplus, Inc,* 117 Mich App 601, 608; 324 NW2d 96 (1982), where the issue involves a review of a trial court's order finding no legal duty, we generally review that finding as a grant of summary judgment for failure to state a claim. GCR 1963, 117.2(1). See *Metheny v Coy-Magee Custom Builder, Inc,* 121 Mich App 580, 582; 329 NW2d 428 (1982).

A grant or denial of a motion for summary judgment for failure to state a claim, GCR 1963, 117.2(1), tests the legal basis of the complaint, not its factual support. The reviewing court must rely on the pleadings alone and assume that the factual allegations in the complaint are true, along with any inferences or conclusions which may be drawn from those facts. The motion should be granted only when the claim is so unenforceable as a matter of law that no factual development could possibly justify a right to recovery. *Partrich v Muscat,* 84 Mich App 724, 729-730; 270 NW2d 506 (1978); *Methany v Coy-Magee Custom Builder, Inc, supra.*

We find that, although plaintiffs asserted that Conrail's legal duty was to provide Blake and Burton with a safe workplace, a reader could infer from the plaintiffs' complaint that plaintiffs alleged that Conrail also had a duty to protect Blake and Burton from Bladel's criminal assault against them during the course of their employment. Such a claim is a cognizable FELA action. Therefore, the trial court erred as a matter of law by finding that defendants owed no duty to Blake and Burton. See *Lillie v Thompson,* 332 US 459, 462; 68 S Ct 140; 92 L Ed 73 (1947); 2 Restatement Torts, 2d, § 302B, p 88;[2] 2 Restatement Torts, 2d, § 314B(1), p

[2] "§ 302B. Risk of Intentional or Criminal Conduct

"An act or an omission may be negligent if the actor realizes or

122;[3] 2 Restatement Agency, 2d, § 471, p 405.[4]

Plaintiffs' claim against Conrail under FELA is governed by federal case law. See *Mortensen v Southern Pacific Co,* 245 Cal 2d 241; 53 Cal Rptr 851 (1966). FELA provides:

"Every common carrier by railroad while engaged in commerce between any of the several States or Territories * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 USC 51.

To state a claim under the act, a plaintiff is required to show only that negligence of the employer played any part at all in the injury or death. *Inman v Baltimore & O R Co,* 361 US 138, 140; 80 S Ct 242; 4 L Ed 2d 198 (1959); *Rogers v*

should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."

[3] "§ 314B. Duty To Protect Endangered or Hurt Employee

"(1) If a servant, while acting within the scope of his employment, comes into a position of imminent danger of serious harm and this is known to the master or to a person who has duties of management, the master is subject to liability for a failure by himself or by such person to exercise reasonable care to avert the threatened harm."

[4] "§ 471. Duty of Warning

"A principal is subject to liability in an action of tort for failing to use care to warn an agent of an unreasonable risk involved in the employment, if the principal should realize that it exists and that the agent is likely not to become aware of it, thereby suffering harm."

*Missouri P R Co,* 352 US 500, 507-508; 77 S Ct 443; 1 L Ed 2d 493 (1957). The FELA was intended to drastically increase the employer's duty to pay damages for negligence causing injury to its employees. *Rogers, supra.*

A railroad employer has a duty under FELA to make reasonable provisions to protect its employees against foreseeable criminal misconduct. *Lillie v Thompson, supra; Burns v Penn Central Co,* 519 F2d 512 (CA 2, 1975). Criminal conduct may be foreseeable if an area is "frequented by dangerous characters", poorly lit, and unguarded, *Lillie, supra,* pp 460-461; *McCann v Smith,* 370 F2d 323, 324 (CA 2, 1966). *Cf. Hartel v Long Island R Co,* 356 F Supp 1192 (SD NY, 1972), *aff'd* 476 F2d 462 (CA 2, 1973), *cert den* 414 US 980; 94 S Ct 273; 38 L Ed 2d 224 (1973).

In *Hartel, supra,* the widow of defendant's ticket agent filed a FELA action as administratrix of her husband's estate and on her own behalf. Her husband was shot to death during a robbery of his ticket station. The trial court granted defendant's directed verdict upon a finding that plaintiff did not introduce evidence showing that defendant could reasonably foresee the possibility of a holdup at that particular railway station.

The trial judge in this case apparently relied upon the following language in *Hartel,* 476 F2d 464, which adopts an "exact locus" test:

"In attempting to demonstrate the foreseeability of the criminal assault which caused her husband's death, plaintiff offered to prove that in the preceding four years there had been ten robberies or attempted robberies at defendant's stations located between 4.7 and 29.8 miles from the Mineola station. Two of these had occurred in the month immediately preceding the Mineola holdup. Judge Levet refused to permit this proof.

Plaintiff here argues that evidence of prior holdups should have been admitted to show that the LIRR did have knowledge of the dangers ticket agents faced. In each of the cases cited by plaintiff to support this position, however, the *courts have specifically limited evidence of prior incidents to those occurring at the exact locus of the incident giving rise to the litigation.* In addition, they have required that the circumstances under which such incidents occurred must have been substantially the same as those in the action brought. Thus, in *Cahill v New York, N H & H R Co,* 236 F2d 410, 411 (CA 2, 1956), the case most heavily relied upon by plaintiff, a listing of the collisions which had occurred at a particular intersection was admitted to show the railroad's knowledge of the danger of such incidents at that place. In the instant case no prior robbery had occurred at the Mineola station. Therefore, Judge Levet was correct in excluding the evidence of prior robberies. See, also, *Plugh v Baltimore & O R Co,* 164 F2d 254, 256 (CA 2, 1947)." (Footnote omitted; emphasis added.)

We find such reliance misplaced. In *Hartel,* the criminal perpetrators were not alleged to be known assailants. Rather, the plaintiff intended to show that defendant knew or should have know that ticket agents, such as her husband, were subject to criminal assaults during holdups or robberies at stations in the general area. When such an allegation is made, evidence of the conditions and nature of the locus becomes relevant to the foreseeability or notice elements of the plaintiff's case.

In this case, plaintiffs need not depend on proof of the nature or conditions of the particular locus of the murders to show Conrail's breach of its duty to protect Blake and Burton from Bladel's criminal assault. Rather, the proof necessary to show Conrail's breach was precisely that which plaintiffs intended to present: evidence tending to show that Bladel exhibited a clear pattern of violent behav-

ior or suspected violent behavior against Michigan branch Conrail employees on or near railroad property where they were employed and that Conrail knew of that pattern but failed to act upon that knowledge by protecting its Michigan branch employees in a reasonable manner. As plaintiffs asserted a recognized legal duty and intended to present evidence relevant[5] to their claim, the trial court abused its discretion by *in limine* excluding all such intended evidence for that reason.

We also find that plaintiffs stated a cause of action against NRPC under the wrongful death act, *supra.* In *Samson v Saginaw Professional Building, Inc,* 393 Mich 393; 224 NW2d 843 (1975), the Court relied upon the Restatement Torts, 2d, § 302B, *supra,* and 2 Restatement Torts, 2d, § 314A, p 118, which states that a possessor of land or property has a special relationship raising a duty to protect invitees, to hold that a possessor of land has a duty to protect tenants or their agents from unreasonable risk of physical harm, including protection from foreseeable intentional criminal acts of third parties.

Carol Samson was a secretary to an attorney leasing offices in defendants' building. A patient of a state mental health clinic, also a tenant in defendants' building, assaulted Ms. Samson on an elevator in defendants' building. Plaintiff alleged that defendant was negligent in renting to the clinic and thereafter failing to protect other tenants from the foreseeable criminal acts of the clinic's patients. The Court affirmed a jury verdict and award of damages to plaintiff.

Defendant, in *Samson,* argued on appeal that the assault on the plaintiff was the first of its

---

[5] We do not decide whether plaintiffs' evidence would be inadmissible for any other reason under the Michigan Rules of Evidence.

nature to occur in its building. Thus, the assailant's acts were unforeseeable and liability was precluded. The Court stated that, once a special relationship is found between the defendant and the plaintiff which imposes a legal duty to act, the foreseeability of an act and reasonableness of action, or lack thereof, is normally a question for the jury.

"If the risk involves possible death or serious bodily injury to a number of persons, the law requires that some care be exercised even though the probability is slight that the incident will occur. Whether the care exercised was reasonable under the circumstances is for the jury to determine". *Samson, supra,* p 407.

Thus, in *Samson,* although a similar assault had never before occurred in defendant's building, proof that defendant had notice that criminally insane people would be free to roam the common areas of the building was sufficient evidence to uphold the jury's verdict.

We find, as in *Samson,* that, although plaintiffs could not present any evidence of a previous assault upon Michigan branch employees at the Jackson depot, they nevertheless intended to present evidence that would be relevant to the jury's deliberation regarding foreseeability and reasonableness. Defendant NRPC, as the alleged possessor, landlord, or controller of the depot, had a duty to protect Blake and Burton from unreasonable risks of physical harm. Whether Bladel's assault upon plaintiffs' decedents was such an unreasonable risk or was foreseeable was a question for the jury. Because of the magnitude of the risk at issue here, *i.e.,* death, the plaintiffs need not be limited to only evidence of assaults that previously occurred at the Jackson depot. Rather, any evidence

that such an assault by Bladel could foreseeably occur was relevant and should have gone to the jury.

Thus, the trial court's finding that plaintiffs alleged no legally cognizable duty under the wrongful death count was also erroneous. Furthermore, blanket exclusion *in limine* of the evidence plaintiffs intended to present on that count on relevance grounds was an abuse of discretion.

We also find that the trial court erred by *sua sponte* ruling that plaintiffs' expert's testimony would not aid the jury and was, thus, to be excluded. MRE 702. While it is true that a jury could draw its own inferences and conclusions regarding foreseeability and the reasonableness of defendants' inaction or omissions, we find that the jury would be aided by Jan Reber's testimony. The question of reasonable security measures in a train depot under these facts is not commonplace knowledge. See *Ruddock v Lodise,* 413 Mich 499; 320 NW2d 663 (1982).

Thus, we reverse the trial court's order granting defendants' motion *in limine* and summary judgment. We remand this case to the Jackson County Circuit Court for further proceedings.

Costs to plaintiffs.