BLAKE v CONSOLIDATED RAIL CORPORATION

Docket No. 101365. Submitted January 6, 1989, at Detroit. Decided
    April 18, 1989. Leave to appeal applied for.

Robert Blake and Charles Burton, employees of Consolidated Rail
    Corporation (Conrail), were shot and killed by Rudy Bladel
    while working at the National Railroad Passenger Corporation
    (Amtrak) depot in Jackson, Michigan. Joan Blake, personal
    representative of the estate of Robert Blake, and Virginia
    Burton, personal representative of the estate of Charles Burton,
    filed suit against Conrail and Amtrak in Wayne Circuit Court
    alleging negligence against Conrail under the Federal Employ-
    ers' Liability Act and wrongful death against Amtrak on a
    theory of premises liability. Following a jury trial, judgment
    was entered in favor of plaintiffs against Conrail in the amount
    of $4,500,000 and against Amtrak in the amount of $4,400,000,
    Claudia House Morcom, J. Defendants appealed, and plaintiffs
    cross-appealed.

The Court of Appeals *held:*

1. The trial court did not err in denying Conrail's motion for
    judgment notwithstanding the verdict wherein Conrail argued
    that it had no duty to prevent the murders of plaintiffs'
    decedents. This issue was decided by the Court of Appeals in an
    earlier appeal, 129 Mich App 535 (1983). Under the doctrine of
    the law of the case, the duty question could not be revisited by
    the trial court nor by the Court of Appeals in this appeal.

2. The trial court did not err in denying Amtrak's motion for
    judgment notwithstanding the verdict on the basis that there
    was insufficient evidence of foreseeability, reasonableness, and
    causation. Looking at the evidence in a light most favorable to
    plaintiffs, reasonable jurors could reach different conclusions,
    making the denial of the motion proper. Furthermore, there

REFERENCES

Am Jur 2d, Appeal and Error §§ 112, 545-647, 744-759, 836; Evi-
    dence §§ 260, 617-620; Federal Employers' Liability and Compen-
    sation Acts § 78.

Admissibility, as against interest, in civil case of declaration of
    commission of criminal act. 90 ALR3d 1173.

was sufficient evidence on the issues of foreseeability, causation, and reasonableness of care.

3. The trial court correctly instructed the jury as to plaintiffs' burden of proof under the FELA claim.

4. Amtrak's argument that the trial court erred in admitting evidence of Rudy Bladel's suspected criminal activities against Amtrak is without merit.

5. The trial court did not err in admitting testimony regarding Rudy Bladel's statements and confessions. The statements and confessions were admissible under MRE 804 (b)(3) because they were declarations against his penal interest and he was unavailable to testify because he would assert his Fifth Amendment privilege not to incriminate himself.

6. The trial court did not err in excluding evidence of, and in not instructing on, the violation of Rudy Bladel's Sixth Amendment right to counsel in the criminal action against him. The fact that Bladel's inculpatory statements and confession were obtained in violation of his right to counsel does not affect the reliability of those statements and is irrelevant to the civil case. Defendants were able to present to the jury the fact that Bladel's convictions had been reversed.

7. Defendants' arguments that the trial court erred in admitting certain exhibits, finding them to be more probative than prejudicial, will not be considered on appeal. Defendants did not argue in the trial court that the exhibits were inadmissible.

8. The trial court correctly instructed the jury that defendants could have posted or distributed a photograph of Rudy Bladel for purposes of identification among Conrail police or security personnel and Amtrak personnel or in restricted areas of Amtrak railroad depots without giving rise to a claim of defamation or invasion of privacy under Michigan law.

9. The trial court did not err in denying defendants' motion for mistrial following graphic testimony of decedent Blake's suffering and death. The testimony was relevant to the issue of damages.

10. The trial court did not err in denying defendants' motion for new trial or remittitur on the grounds that the verdicts were unsupported and excessive. The damage awards are within the range supported by the proofs and what reasonable minds would deem just compensation.

11. The trial court did not err in denying prejudgment interest on the FELA claim against Conrail or in denying a jury trial on the interest issue.

Affirmed.

1. APPEAL — LAW OF THE CASE.

An adjudication on an issue in a prior appeal is the law of the case and is the final judgment as to that issue in all subsequent proceedings in that case in which the facts are substantially the same.

2. APPEAL — MOTIONS AND ORDERS — DIRECTED VERDICT — JUDGMENT NOTWITHSTANDING THE VERDICT.

The testimony and all legitimate inferences that may be drawn therefrom must be examined in the light most favorable to the plaintiff when a trial court's failure to grant a defendant's motion for a directed verdict or a judgment notwithstanding the verdict is reviewed on appeal; if reasonable jurors could honestly have reached different conclusions, the motion should have been denied.

3. NEGLIGENCE — FEDERAL EMPLOYERS' LIABILITY ACT.

A jury instruction in an action brought under the Federal Employers' Liability Act in which the trial court stated that the plaintiffs could establish their claims by showing that the defendant was negligent even if that negligence was minimal was not erroneous (45 USC 51 *et seq.*).

4. EVIDENCE — HEARSAY — EXCEPTIONS.

Testimony as to statements and confessions made by a person not a party in a civil action may be admissible as an exception to the hearsay rule where they were declarations against his penal interest and he was unavailable to testify because he would assert his Fifth Amendment privilege not to incriminate himself (MRE 804[b][3]).

5. EVIDENCE — STATEMENTS AND CONFESSIONS — CRIMINAL LAW — CIVIL LAW.

The fact that a person's criminal conviction was reversed because certain statements had been obtained by the authorities in violation of the person's Sixth Amendment right to counsel does not make the statements inadmissible in a civil action in which the criminal defendant is not a party; the reversal of the conviction on the basis of a violation of the right to counsel is irrelevant to the reliability of the statements and confession in the civil action.

6. APPEAL — PRESERVING QUESTION.

The Court of Appeals will not review an issue on appeal where a defendant has failed to object in the trial court absent a finding of manifest injustice.

7. EVIDENCE — SUFFERING AND DEATH — GRAPHIC TESTIMONY —
    DAMAGES.

   Graphic testimony of a decedent's suffering and death may be
   admissible where relevant to the issue of damages.

8. APPEAL — DAMAGES — JURY AWARDS.

   Damage awards made by juries are reviewed to determine
   whether the awards shock the judicial conscience, appear un-
   supported by the proofs, or seem to be the product of improper
   methods, passion, caprice, or prejudice; if the amount awarded
   reasonably falls within the range of the evidence and within
   the limits of what reasonable minds would deem just compensa-
   tion for the injuries sustained, the verdict will not be disturbed.

*Richard M. Goodman, P.C.* (by *Richard M. Good-
man*), and *Julie H. Hurwitz, P.C.* (by *Julie H.
Hurwitz* and *Thomas W. Stephens*), for plaintiffs.

*Durkin, McDonnell & Clifton* (by *T. Patrick
Durkin*), and *Schnader, Harrison, Segal & Lewis*
(by *Ralph G. Wellington, Maida Rosenfeld Crane,*
and *Gayle Chatilo Sproul*), for defendants.

Before: GILLIS, P.J., and SHEPHERD and SAWYER,
JJ.

PER CURIAM. Defendants appeal, and plaintiffs
cross-appeal, from a judgment of the circuit court
entered in favor of plaintiffs and against defendant
Consolidated Rail Corporation, also known as Con-
rail, in the amount of $4,500,000 on plaintiffs'
claim under the Federal Employers' Liability Act,
45 USC 51 *et seq.*, and of $4,400,000 against defen-
dant National Railroad Passenger Corporation,
also known as Amtrak, on plaintiffs' wrongful
death claim on a theory of premises liability. We
affirm.

This action arises from the December 31, 1978,
murder of three railroad workers, Robert Blake,
Charles Burton, and William Gulak, by Rudy Bla-
del. The three victims were employed by Conrail

and the murders occurred at a depot in Jackson, Michigan, owned by Amtrak. These murders have resulted in a number of court opinions. With respect to the murder charges against Rudy Bladel, he was convicted in July, 1979, of three counts of first-degree murder and sentenced to life in prison. Bladel took an appeal to this Court, which affirmed. *People v Bladel,* 106 Mich App 397; 308 NW2d 230 (1981). Bladel then filed an application for leave to appeal with the Michigan Supreme Court, which, in lieu of granting leave to appeal, remanded the matter to this Court for reconsideration in light of *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982). *People v Bladel,* 413 Mich 864; 317 NW2d 855 (1982). On remand, this Court concluded that it was compelled to reverse Bladel's conviction in light of *Paintman, supra,* which addressed the issue of violation of right to counsel in the context of an interrogation occurring after a defendant has requested the appointment of counsel. *People v Bladel (On Remand),* 118 Mich App 498; 325 NW2d 421 (1982). Thereafter, the Michigan Supreme Court granted the prosecutor's application for leave to appeal and affirmed the reversal of Bladel's conviction, concluding that there had been an infringement on his right to counsel. *People v Bladel (After Remand),* 421 Mich 39; 365 NW2d 56 (1984). Thereafter, the United States Supreme Court granted certiorari to consider both *Bladel* and its companion case, *People v Jackson.* Thereafter, the United States Supreme Court agreed with the conclusions of the Michigan Supreme Court and of this Court that Bladel's right to counsel had been infringed and affirmed the reversal of Bladel's conviction sub nom *Michigan v Jackson,* 475 US 625; 106 S Ct 1404; 89 L Ed 2d 631 (1986). Finally, we understand that Bladel was retried and again convicted of three counts of first-

degree murder on June 19, 1987. It does not appear that Bladel appealed following those convictions.

Meanwhile, plaintiffs filed the instant action in Jackson Circuit Court on January 19, 1979. On May 24, 1982, the trial court granted summary judgment in favor of defendants pursuant to GCR 1963, 117.2(1), now MCR 2.116(C)(8). Specifically, defendants had moved in limine to exclude all evidence at trial of any alleged activities of Rudy Bladel, criminal or otherwise, that occurred prior to the murders. This motion was granted by the trial court, which also sua sponte ruled that it would exclude the testimony of plaintiffs' expert witness who would testify that defendants could have foreseen the murders and as to what reasonable security measures defendants could have taken to prevent the murders.

On the day trial was to commence, plaintiffs moved for a stay of proceedings, so they could pursue an interlocutory appeal of the grant of the motion in limine, or for a dismissal without prejudice, presumably so they could seek the same appeal. The motions were denied. Thereafter, defendants moved for summary judgment and plaintiffs conceded that they could not present a prima facie case without the excluded evidence; accordingly, the trial court granted summary judgment. Plaintiffs then appealed to this Court, which concluded that the trial court had erred in concluding that plaintiffs had not alleged a legally cognizable duty owed by defendants to plaintiffs and in excluding in limine the evidence relevant to that duty and, therefore, reversed the grant of summary judgment. *Blake v Consolidated Rail Corp,* 129 Mich App 535; 342 NW2d 599 (1983).

This Court described the excluded evidence, and the trial court's ruling, as follows:

At the hearing on the motion *in limine,* plaintiffs' counsel argued that the evidence that defendants wished excluded went to the core of plaintiffs' theory that defendants knew of Rudy Bladel's violent propensities and vendetta against Conrail's Michigan branch employees. Proof of this knowledge was necessary to show that Bladel's assault against Blake and Burton was foreseeable by defendants.

Included in the evidence plaintiffs intended to present were documents and testimony regarding Bladel's 1971 conviction for assault of a Michigan branch Conrail employee in Indiana and a federal weapons possession conviction in 1978, stemming from Bladel's purchase of a gun in Elkhart, Indiana. Besides these actual criminal convictions plaintiffs intended to introduce at trial evidence showing that defendants knew that Bladel was strongly suspected of the 1963, 1968, and 1976 murders of other Michigan branch Conrail employees in Hammond and Elkhart, Indiana. Plaintiffs also intended to present evidence that defendants had in their possession, or knew of, a threatening letter written by Bladel in 1977 to a Niles, Michigan, Conrail employee, outlining his vendetta against Michigan branch employees. Lastly, plaintiffs intended to introduce documents and testimony regarding defendants' knowledge of Bladel's trespasses on railroad property in Elkhart, Indiana, and Niles and Porter, Michigan.

On February 18, 1982, the trial court filed its amended opinion granting defendants' motion *in limine.* In that opinion, the trial court stated that none of the evidentiary material outlined above involved events which occurred closer geographically than approximately 100 miles west of Jackson. The court said that:

"No case has been cited which would place upon an employer-defendant a duty to foresee danger to its employees from third persons, including ex-employees, at a location so remote from the site of the nearest previous incident indicating the possibility of danger to employees."

> While the trial court noted that FELA case law recognized an employer's duty to warn employees about dangerous conditions or areas of employment, the court said defendants did not have a duty to warn or notify employees of a potentially dangerous person.
>
> In the same opinion granting defendants' motion *in limine,* the trial court *sua sponte* excluded the testimony of plaintiffs' expert witness, Jan Reber. According to Mr. Reber's affidavit, he was an expert and consultant in the area of security analysis for corporations engaged in industrial, transportation, and technological activities. He stated he had reviewed plaintiffs' discovery materials and, based upon the facts known to defendants, would express his opinion regarding the foreseeability of the Jackson murders and what reasonable security measures defendants could have taken to prevent those murders. [*Blake, supra,* at 540-541.]

Following this Court's reversal of the grant of summary judgment, plaintiffs successfully moved for a transfer of venue to the Wayne Circuit Court and the matter proceeded to trial, resulting in the aforementioned judgments in plaintiffs' favor.

Trial in the instant action lasted six weeks and it is neither necessary nor desirable to review the testimony in any great detail. Briefly, the evidence presented at trial generally established the points discussed in the above-quoted material concerning what plaintiffs had intended to establish at trial. That is, plaintiffs offered extensive evidence concerning the conduct of Rudy Bladel and the extent of the knowledge by Conrail and Amtrak concerning Bladel's vendetta against Michigan railroad workers and Bladel's involvement or suspected involvement in the prior killings or assaults on Michigan railroad workers and the actions or inactions taken by Conrail and Amtrak to protect its workers from Rudy Bladel.

Specifically, it was brought out that Bladel, who had been a longtime railroad worker, hated Michigan railroad workers because the Michigan workers came to work in Indiana, where Bladel lived, causing him to lose his relative seniority ranking with the railroad. Bladel had never specifically worked for Conrail or Amtrak, though he had worked for Penn Central, which was subsequently bought by Conrail after Bladel was fired.

The string of murders and assaults attributed to Bladel goes back to 1963, when two railroad workers, Ray Bottorf and Paul Overstreet, were murdered in Hammond, Indiana, where Bladel then lived. Although Bladel is suspected in those murders, they remain unsolved. Next, in 1968, a Michigan railroad employee, John Marshall, was murdered in Elkhart, Indiana, where Bladel was living at that time. Again, although Bladel is suspected in the murder, it remains unsolved.

The first shooting which can be directly related to Bladel is the 1971 shooting of a Michigan railroad employee, Louis Sayne, in Elkhart, Indiana. Sayne survived the shooting, wherein Bladel was also wounded in the ensuing struggle. In the hospital following the shooting, Bladel reportedly told Sayne, "You've got my job. I did all I could to keep you Michigan men out." Furthermore, it came out that, following the shooting and his release from prison for that shooting, Bladel told a fellow employee that "he wished he had killed the guy" and that "all Michigan engineers deserved it." In fact, Bladel was convicted of an assault and served three years in a federal penitentiary for the shooting and was fired from his job with Penn Central.

Thereafter, on April 5, 1976, another Michigan railroad employee, James McCrory, was murdered in Elkhart, Indiana. Although Bladel became a suspect in the McCrory murder within hours of

the killing and is considered to be a prime suspect in that killing, the McCrory murder remains unsolved. Bladel's next imprisonment occurred in 1977 or 1978, when he was convicted on a federal weapons offense arising out of the falsification of an application to purchase a firearm. Bladel remained in prison until November 16, 1978, 1½ months before the murders of plaintiffs' decedents.

Much of the other information produced at trial concerned the information about Rudy Bladel procured by the various police departments investigating the unsolved murders and the 1971 assault as well as the information gathered by Conrail's own police personnel or the information provided to the Conrail police by other police agencies. Also brought out was the fact that there had been a number of sightings of Rudy Bladel on railroad property over a long period of time. Specifically, evidence was produced that there was a November 18, 1978, report on Conrail stationery by Conrail Officer Long which indicated that "Rudy Bladel is back in town" and that he had been released from prison and was still mad at anyone connected with the railroad. There was also evidence that Sergeant Keck of the Elkhart Police Department visited the Conrail yard at various times following Bladel's release from prison and the killings, telling various Conrail officers that Bladel had been released and would kill again. Additionally, there was also a great amount of testimony presented concerning what actions were taken by Conrail officials to protect employees against the threat posed by Rudy Bladel and what Conrail failed to do to protect its employees. The essence of plaintiffs' case is that Conrail was aware of the threat posed by Bladel and failed to take adequate measures to protect its employees from Rudy Bladel again killing a Michigan railroad worker.

The parties raise a number of issues on appeal.

We turn first to Conrail's argument that the trial court erred in denying its motion for judgment notwithstanding the verdict wherein Conrail argued that it had no duty to prevent the murders of plaintiffs' decedents. We believe, however, that the issue of Conrail's duty to protect the decedents from Rudy Bladel was decided by this Court in the prior appeal and, therefore, under the doctrine of the law of the case, the duty question could not be revisited by the trial court nor by this Court in this appeal.

Under the doctrine of the law of the case, an adjudication on an issue in a prior appeal is the law of the case and all subsequent proceedings in that case in which the facts are substantially the same. The doctrine is applied in order to achieve finality of judgment and because there is a want of jurisdiction in an appellate court to modify its own judgments except on rehearing. See *Johnson v White,* 430 Mich 47, 52-53; 420 NW2d 87 (1988).

This Court in the prior appeal considered at length the issue of Conrail's duty to protect plaintiffs' decedents from Bladel's criminal assault during the course of their employment. In concluding that such a duty existed, this Court in *Blake, supra* at 543-545, opined as follows:

> We find that, although plaintiffs asserted that Conrail's legal duty was to provide Blake and Burton with a safe workplace, a reader could infer from the plaintiffs' complaint that plaintiffs alleged that Conrail also had a duty to protect Blake and Burton from Bladel's criminal assault against them during the course of their employment. Such a claim is a cognizable FELA action. Therefore, the trial court erred as a matter of law by finding that defendants owed no duty to Blake and Burton. See *Lillie v Thompson,* 332 US 459, 462; 68 S Ct 140;

92 L Ed 73 (1947); 2 Restatement Torts, 2d, § 302B, p 88; 2 Restatement Torts, 2d, § 314B(1), p 122; 2 Restatement Agency, 2d, § 471, p 405.

Plaintiffs' claim against Conrail under FELA is governed by federal case law. See *Mortensen v Southern Pacific Co,* 245 Cal 2d 241; 53 Cal Rptr 851 (1966). FELA provides:

"Every common carrier by railroad while engaged in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 USC 51.

To state a claim under the act, a plaintiff is required to show only that negligence of the employer played any part at all in the injury or death. *Inman v Baltimore & O R Co,* 361 US 138, 140; 80 S Ct 242; 4 L Ed 2d 198 (1959); *Rogers v Missouri P R Co,* 352 US 500, 507-508; 77 S Ct 443; 1 L Ed 2d 493 (1957). The FELA was intended to drastically increase the employer's duty to pay damages for negligence causing injury to its employees. *Rogers, supra.*

A railroad employer has a duty under FELA to make reasonable provisions to protect its employees against foreseeable criminal misconduct. *Lillie v Thompson, supra; Burns v Penn Central Co,* 519 F2d 512 (CA 2, 1975). Criminal conduct may be foreseeable if an area is "frequented by dangerous characters," poorly lit, and unguarded, *Lillie, supra,* pp 460-461; *McCann v Smith,* 370 F2d 323,

324 (CA 2, 1966). *Cf. Hartel v Long Island R Co,*
356 F Supp 1192 (SD NY, 1972), aff'd 476 F2d 462
(CA 2, 1973), cert den 414 US 980; 94 S Ct 273; 38
L Ed 2d 224 (1973).

Although the exact issues raised in the prior
appeal concerned the trial court's rulings in limine
excluding certain evidence, the exclusion of that
evidence was premised upon the trial court's con-
clusion that no duty existed, and this Court's
resolution of the evidentiary issues was predicated
upon a determination of the duty issue. Thus, the
issue of duty was considered by this Court in the
prior appeal and the resolution of that issue was
necessary in reaching the disposition of that prior
appeal. Accordingly, the doctrine of the law of the
case prevents Conrail from relitigating the issue of
its duties to plaintiffs' decedents under FELA. We
conclude that the trial court did not err in denying
Conrail's motion for a judgment notwithstanding
the verdict on the basis of duty.

We now turn to Amtrak's argument that the
trial court erred in denying its motion for judg-
ment notwithstanding the verdict on the basis that
there was insufficient evidence of foreseeability,
reasonableness, and causation.

The Supreme Court stated the standard of re-
view for denial of a judgment notwithstanding the
verdict in *Matras v Amoco Oil Co,* 424 Mich 675,
681-682; 385 NW2d 586 (1986):

In reviewing a trial court's failure to grant a
defendant's motion for a directed verdict or a
judgment notwithstanding the verdict, we examine
the testimony and all legitimate inferences that
may be drawn in the light most favorable to the
plaintiff. If reasonable jurors could honestly have
reached different conclusions, the motion should
have been denied. If reasonable jurors could dis-

agree, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury.

Looking at the evidence in a light most favorable to plaintiffs, we believe that reasonable jurors could reach different conclusions, thus making the denial of Amtrak's motion for judgment notwithstanding the verdict proper. Additionally, we believe there was sufficient evidence of foreseeability and a lack of reasonableness of care to support the jury's verdict. Without restating all the evidence presented on the issues of foreseeability and reasonableness of care, extensive evidence was presented at trial concerning Conrail and Amtrak's familiarity with Rudy Bladel's history and his hatred of Michigan railroad workers. Furthermore, significant evidence was presented concerning what Conrail and Amtrak could have done to protect plaintiffs' decedents and what they failed to do. Accordingly, we believe that there was sufficient evidence on the issues of foreseeability, causation, and reasonableness of care.

Next, we turn to Conrail's argument that the trial court erred in instructing the jury that plaintiffs need only prove that Conrail was minimally negligent under the FELA claim. We believe that the trial court correctly instructed the jury. See *Jones v New York C R Co,* 8 Mich App 575, 580-581; 155 NW2d 216 (1967), citing *Rogers v Missouri P R Co,* 352 US 500; 77 S Ct 443; 1 L Ed 2d 493 (1957). See also *Moody v Maine C R Co,* 823 F2d 693, 695 (CA 1, 1987).

Amtrak also argues that the trial court erred in admitting evidence of Rudy Bladel's suspected criminal activities against Amtrak. This argument is without merit for several reasons. First, the issue of the admissibility of evidence of Rudy

Bladel's suspected criminal activities was previously resolved by this Court in *Blake, supra.* Second, it does not appear that Amtrak properly preserved the issue for review by first raising in the trial court the specific objections that Amtrak now argues on appeal. See *People v Furman,* 158 Mich App 302, 329-330; 404 NW2d 246 (1987). Finally, we also conclude that Amtrak has not presented this issue properly for appellate review because its argument on the issue in its brief is cursory at best and contains no citation to authority to support its position. See *Community Nat'l Bank of Pontiac v Michigan Basic Property Ins Ass'n,* 159 Mich App 510, 520-521; 407 NW2d 31 (1987).

Next, both Amtrak and Conrail contend that the trial court erred in admitting testimony regarding Rudy Bladel's statements and confessions. Defendants argue that Bladel's statements were hearsay not admissible under any exception to the hearsay rule. We disagree. We believe that they were admissible under MRE 804(b)(3) because they were declarations against his penal interest and he was unavailable to testify because he would assert his Fifth Amendment privilege not to incriminate himself.[1]

Defendants next contend that the trial court erred in excluding evidence of, and in not instructing on, the violation of Rudy Bladel's Sixth

[1] While the better practice may have been to subpoena Rudy Bladel to testify and allow him to assert his Fifth Amendment privilege in response to any individual question posed to him on the witness stand, any error in failing to follow this procedure is harmless. Bladel's intent to assert his Fifth Amendment privilege was evidenced by his attorney's affidavit that Bladel would do so and, had Bladel been put on the stand and asserted his privilege, the statements would then have come in in any event. Accordingly, we conclude that any error in not requiring Rudy Bladel to personally invoke the privilege against self-incrimination on the witness stand was harmless. See *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

Amendment right to counsel. Defendants argue that, since Bladel's criminal conviction was reversed, because certain statements had been obtained by the authorities in violation of Bladel's Sixth Amendment right to counsel, that fact should have been presented to the jury so that it could consider the credibility and weight of Bladel's statements in light of the fact that they had been illegally obtained. We disagree.

The decision of the United States Supreme Court in *Jackson, supra,* and the prior opinions of this Court and the Michigan Supreme Court that Rudy Bladel's inculpatory statements and confession made following his arraignment on the murder charges were obtained in violation of his right to counsel do not affect the reliability of those statements. Indeed, the decisions of the United States Supreme Court and the inferior tribunals are irrelevant to the reliability of those statements and confession in this civil action. That is, Bladel's conviction was not reversed because the statements and confession were inherently unreliable, but as a prophylactic measure against the violation of Bladel's constitutional rights. Simply put, the United States Supreme Court and the Michigan courts were not concerned with the reliability of Bladel's statements, but rather with the validity of any waiver of Bladel's right to counsel. See *Jackson, supra* at 636. Since the decision of the United States Supreme Court was irrelevant to the civil case, that decision was properly excluded pursuant to MRE 401 and 402. We note, however, that defendants were able to present to the jury the fact that Bladel's convictions had been reversed.

We next turn to defendants' arguments that the trial court erred in admitting certain exhibits, finding them to be more probative than prejudi-

cial. Defendants specifically object to the admission of twenty-six exhibits.[2] However, as to eleven of those exhibits, defense counsel expressly stated on the record that they had no objection to the admission of those exhibits. As to the remaining exhibits, although defendants did object on the basis of hearsay and relevance, they did not object on the basis that the exhibits were prejudicial, MRE 403, which is the basis of their argument on appeal. Since defendants did not argue that the exhibits were inadmissible under MRE 403 in the trial court, we will not consider that argument on appeal. See *Furman, supra.*

Next, both defendants argue that the trial court erred in instructing the jury that defendants could have distributed and posted photographs of Rudy Bladel without giving rise to a claim of defamation or invasion of privacy under Michigan law. We disagree. We believe the trial court correctly instructed the jury that defendants could have posted or distributed a photograph of Rudy Bladel for purposes of identification among Conrail police or security personnel and Amtrak personnel or in restricted areas of Amtrak railroad depots. Such postings could truthfully state facts known about Rudy Bladel, such as the fact that he had previously shot Sayne.

Both defendants next argue that the trial court erred in denying their motion for mistrial following graphic testimony of decedent Blake's suffering and death. We believe that the testimony concerning the conscious pain and suffering by decedent Blake prior to the time of his death was relevant to the issue of damages. Accordingly, we do not believe that the trial court abused its discretion in denying the motion for mistrial. *McCarthy v*

[2] Specifically, defendants object to the admission of exhibits 1-3, 6-7, 11-24, 26-30, and 44-45.

*Belcher,* 128 Mich App 344, 347; 340 NW2d 848 (1983).

Next, defendants both argue that the trial court erred in denying their motion for new trial or remittitur on the grounds that the verdicts were unsupported and excessive. We disagree. Damage awards made by juries are reviewed to determine whether the award shocks the judicial conscience, appears unsupported by the proofs, or seems to be the product of improper methods, passion, caprice, or prejudice; if the amount awarded reasonably falls within the range of the evidence and within the limits of what reasonable minds would deem just compensation for the injuries sustained, the verdict will not be disturbed. *Precopio v Detroit,* 415 Mich 457, 465; 330 NW2d 802 (1982). While the awards in the case at bar are certainly large, they do not shock our conscience and we believe they are within the range supported by the proofs and what reasonable minds would deem just compensation. Accordingly, we do not believe that the trial court erred in denying a new trial or remittitur.

Finally, we turn to the issue raised by plaintiffs on cross-appeal; plaintiffs contend that the trial court erred in denying prejudgment interest on the FELA claim against Conrail and also in denying a jury trial on the interest issue. This issue, however, has been resolved by the recent Supreme Court decision in *Monessen S R Co v Morgan,* 486 US —; 108 S Ct 1837; 100 L Ed 2d 349 (1988). In light of *Monessen,* the trial court did not err.

For the above reasons, we conclude that none of the parties have presented any claims of error which merit reversal.

Affirmed. No costs, neither side having prevailed in full.